[Civ. No. 9052.    Third Dist.    June 11, 1957.]

BENNIE FRANKLIN BARNES, Appellant, v. WESTERN PIONEER INSURANCE COMPANY (a Corporation), Respondent.

WILLIS LEE RILEY, Appellant, v. WESTERN PIONEER INSURANCE COMPANY (a Corporation), Respondent.

670

C. Ray Robinson, Ronald G. Cameron and Donald E. Oren for Appellants.

Ericksen & Ericksen and Robert H. Kroninger for Respondent.

VAN DYKE, P. J.—Appellants, as plaintiffs, brought separate actions against respondent, seeking declaratory relief as to the liability of the respondent on a contract of automobile liability insurance issued to one Andy Virgil Gordon, whose automobile was involved in a collision that resulted in injury to the plaintiffs. The two causes were combined for trial, and the appeals are presented on a single reporter's transcript.

The court, upon substantial evidence, made the following findings of fact: On January 8, 1952, respondent issued to Gordon a policy of automobile liability insurance which, by its terms, covered the operation of a 1946 DeSoto automobile. The term of the policy was for one year, and the premium was paid in full. At the time the policy was issued and for two years previous thereto Gordon owned a 1934 Ford. Franklin P. Andrews was the local agent of the company who sold the policy to Gordon. He was a general agent, with authority to bind respondent. On April 1, 1952, respondent advised Andrews and Gordon by letter that, effective 12.01 a. m. April 7, 1952, the policy would be cancelled. After receiving the notice, Gordon drove his Ford to the office of Andrews and requested that the insurance coverage be transferred from the DeSoto to the Ford. Andrews told him that, due to the cancellation, the reason for which was unknown to Andrews, he could not make the requested transfer of coverage. Andrews told Gordon that until the matter was straightened out, or until Gordon had acquired insurance with some other company, he, Andrews, could do nothing, and, finally, that

he would write the company to inquire as to the cause of the cancellation. The cancellation had, in fact, been erroneously made by the respondent. On April 8, 1952, at 10:30 a. m., while driving the Ford, with knowledge that the coverage on the DeSoto had not been transferred to the Ford, Gordon was involved in an accident out of which this controversy arose. The respondent, having discovered its error, mailed notice, under date of April 8, 1952, to Gordon and to Andrews of reinstatement of the policy upon the DeSoto. The respondent at no time returned or offered to return any of the premium payments, but retained the whole thereof. Thereafter Gordon bought a third car, a Buick, and on or about May 17th, at his request, the coverage upon the policy was transferred from the DeSoto to the Buick. Based on the foregoing findings, the trial court concluded that the policy was in full force and effect on April 8, 1952, at the time of the accident, but the protection afforded thereby did not extend to the Ford; that neither respondent nor its agent owed a legal duty to transfer the coverage. Judgment for respondent followed.

Appellants contend that when the company reinstated the contract of insurance and retained the premiums with knowledge, through the knowledge of its agent, that the insured desired coverage on the Ford automobile because he was disposing of the DeSoto, respondent consented to modification of the contract to cover the operation of the Ford. In support of this position, they argue that notice to and knowledge of the agent gained in the course of his agency is notice to and knowledge of the principal; that, under principles of contract law, the modification of a contract of insurance is governed by the rules which are applicable to contracts generally; that the essential elements necessary for the existence of contractual obligations are parties capable of contracting, their consent, a lawful object, and a sufficient cause or consideration. They argue that the retention of the year's premium, with knowledge that the insured desired to modify the contract, was a factor, which, with the others, required the trial court to find that the contract had, in fact, been modified. We do not agree. ■ Modification of the contract required the consent of both parties, and, while such modification can often be inferred from conduct, such was not the situation here in view of the court's findings of fact as to what occurred between the insured and respondent's agent when the insured requested that the coverage be transferred to the Ford. The

answer of the agent to the request was an emphatic no, and it made no difference that he based it upon his belief that the contract had been cancelled by unilateral action by respondent. It was not shown that the contract itself required modification upon request of the insured by transferring the coverage to any other car than the one specifically described in the policy. The policy was not an open policy but, on the contrary, covered a specifically described automobile without any right in the insured to demand that the coverage be transferred to another car.  Under such circumstances, the agent's refusal to grant the insured's request for transfer of coverage could have been arbitrary, notwithstanding the company had, without right, purported to cancel the policy. This lack of consent was known to the insured when he left the office of the agent. The court so found, and the evidence amply supports the finding.  The insured, therefore, knew, when he elected to drive the Ford on the highway, that the coverage had not been extended to it, and that as to the operation of that car he was uninsured.  The vital element of consent to modification was lacking.

Appellants next argue that the reformation of the policy would have been authorized on the facts of the case so as to make the written contract so reformed reflect the intent of the parties.  What we have said heretofore disposes of this contention, for the court has found impliedly that there was never any intention on the part of respondent to modify the written contract so as to afford coverage on the Ford car. This lack of intent did not depend upon fraud or mutual mistake or mistake of one party known by the other.  It was simply a flat refusal to modify the contract as written.  We have carefully examined the authorities cited by appellants in support of their contentions, and we find none which afford authority for a reversal of the judgment appealed from.

Appellants further contend that the negligence of respondent company in sending the insured an erroneous notice of cancellation of his policy was the sole proximate cause of the failure of the company's agent to take the procedural steps necessary to a transfer of coverage when first requested, and consequently respondent company is liable for damages flowing directly from such negligence.  But the cause of noncoverage was the actual refusal of respondent, through its agent, to insure.  And Gordon's driving the Ford without coverage was the sole proximate cause of loss occurring through lack of coverage.  Unless there was a contract

of insurance, there could be no cause of action in appellants. Nor is the respondent estopped to make the defense here asserted. Estoppel could not exist in view of the facts found by the court, which, as we have said, are amply supported by the evidence, that the insured knew when he operated the Ford on the highways that it was not covered by insurance. He operated the Ford without reliance upon or belief in the existence of insurance coverage.

Finally, appellants contend that the respondent company, as a state-franchised insurer, was obligated to provide coverage required by the applicable state statutes when it issued and reinstated the contract of insurance in question. The argument here is that the business of insurance is affected with a public interest; that this justifies holding insurers to a broader legal responsibility than parties to purely private contracts or transactions; that such a company has an affirmative legal obligation to provide coverage consistent with the policy of the state, which policy has led to the granting of a franchise permitting it to engage in the insurance business; that policies of insurance must be read in the light of applicable statutory provisions. Appellants argue that by the nature of its contract the public interest affecting it, and the various statutory requirements to be read into its policy, the respondent should not be permitted to evade its obligation to provide that coverage which it knew the insured desired and for which the insured paid premiums. ■ But there is no statute requiring automobile liability policies be written in such form as to cast upon the insurer an affirmative obligation at the request of the insured to transfer coverage from one car to another. The findings of the trial court, supported as they are by the evidence, compel the conclusions of law which the court drew and the judgment which it entered.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied July 3, 1957, and appellants' petition for a hearing by the Supreme Court was denied August 6, 1957.