[Civ. No. 21274.   First Dist., Div. Two.   Mar. 12, 1964.]

JULIA G. ELLIOTT, Plaintiff and Appellant, v. OCCI-
DENTAL LIFE INSURANCE COMPANY OF CALI-
FORNIA, Defendant and Respondent.

Maurice C. Ryan for Plaintiff and Appellant.

Sullivan, Roche, Johnson & Farraher and Theodore A. Kolb for Defendant and Respondent.

SHOEMAKER, P. J.—Plaintiff Julia Elliott appeals from a summary judgment in favor of defendant Occidental Life Insurance Company of California.

Plaintiff's second amended complaint alleged that she was the surviving spouse of Robert Elliott, who died on February 24, 1957; that in March or April 1954, defendant issued a group insurance policy to the Western Conference of Teamsters for Bakery Driver-Salesmen in Northern California; that said policy expressly provided that group life insurance in the amount of $5,000 was available to any employee of any qualified subgroup; that said policy also stated that "The insurance shall not be invalidated in whole or in part in the event the Sub-Group fails, due to clerical error, to furnish proper or necessary information relative to the enrollment and effective date of an individual's insurance as set forth in the Insuring Provisions Applicable to Individuals. The insurance of any individual shall not be terminated in the event the Sub-Group fails, due to clerical error, to make the required premium payments on account of such insurance, or in the event the Sub-Group, due to clerical error, reports erroneously a termination under the Insurance Termination provision of the policy"; that both the Oroweat Baking Company of San Francisco, a corporation, and the Oroweat

Oakland Bakery, a copartnership, were qualified subgroups; that in April 1954, Elliott, as an employee of Oroweat Baking Company of San Francisco, availed himself of such insurance and was issued a certificate which named plaintiff as his beneficiary; that shortly thereafter the locus of Elliott's employment was transferred from the Oroweat Baking Company of San Francisco to the Oroweat Oakland Bakery; that the Oroweat Baking Company of San Francisco and the Oroweat Oakland Bakery were in fact the same firm, with the officers of the San Francisco corporation serving also as the copartners of the Oakland firm; that Elliott at all times believed that his transfer from San Francisco to Oakland had no effect upon his insurance, which he believed had been kept in full force and effect; that following said transfer, the Oroweat Baking Company of San Francisco, due to a clerical error, had in fact terminated his employment without his knowledge or consent, had established him as an employee of the Oroweat Oakland Bakery, and had failed to make any further premium deductions or to reenroll him for said insurance; that at the time of Elliott's death on February 24, 1957, said policy of life insurance payable to the plaintiff was still in full force and effect pursuant to the clerical error provision of said policy; that defendant Occidental Life Insurance Company of California had nevertheless failed to pay plaintiff any sum on account of such insurance. Plaintiff prayed for judgment in the amount of $5,000, less any unpaid premiums found to be due the defendant.

Defendant insurer, in its answer, admitted that on April 1, 1954, it had issued a group insurance policy to the Western Conference of Teamsters for Bakery Driver-Salesmen in Northern California; that both the Oroweat Baking Company of San Francisco and the Oroweat Oakland Bakery were qualified subgroups whose employees were entitled to apply for such insurance; that effective April 1, 1954, the life of Elliott was insured under the plan and plaintiff was beneficiary thereof. It was also alleged that under said policy, the insurance was to terminate automatically upon the expiration of the period for which the last premium payment was made on account of the insured; that the date of expiration of the period for which the last premium payment was made on account of Elliott's insurance was April 31 [*sic*], 1954; that no further premium was ever tendered or paid to defendant on his account; that defendant insurer was informed and believed that on or about April 10, 1954, Elliott left the

employ of the Oroweat Baking Company of San Francisco; that at no time subsequent to April 1954 was said insurance on the life of Elliott ever in force or effect; that neither $5,000 nor any other sum was due, owing or unpaid to plaintiff.

Defendant thereafter moved for summary judgment on the ground that the action had no merit as a matter of law. In support of this motion, defendant filed three declarations. The first of these, by the assistant manager of defendant's group accounting department, averred that effective April 1, 1954, defendant had issued a group insurance policy to the Western Conference of Teamsters for Bakery Driver-Salesmen in Northern California; that said policy, a copy of which was appended to the declaration, provided for life insurance in the amount of $5,000, which insurance was available to any employee of an employer which qualified thereunder as a subgroup; that the Oroweat Baking Company of San Francisco was qualified as subgroup 98 and the Oroweat Oakland Bakery was qualified as subgroup 95; that effective April 1, 1954, under subgroup 98, defendant had issued a certificate of group insurance in the amount of $5,000 to Elliott, with plaintiff named as beneficiary.

The second declaration, by the controller and office manager of the Oroweat Baking Company of San Francisco, averred that on May 9, 1954, there was prepared under the declarant's direct supervision a statement of premiums due and payable as of April 1, 1954, on account of the group insurance issued by defendant; that said statement contained a list of the employees on whose behalf said premiums were to be paid and that the name of Robert Elliott was therein included; that said statement, together with a check for all premiums due, was mailed to defendant insurer; that on or about April 10, 1954, Elliott left the employ of the Oroweat Baking Company of San Francisco; that also on May 9, 1954, there was prepared under the declarant's direct supervision a statement of premiums due as of May 1, 1954, on account of said group insurance; that said statement contained a list of the employees on whose behalf the premiums were to be paid, but that the name of Elliott was not therein included; that Elliott's name was omitted from this latter statement for the reason that his employment with the Oroweat Baking Company of San Francisco had terminated prior to May 1, 1954, the date on which said premiums became due and payable; that at no time subsequent thereto did Oroweat Baking

Company of San Francisco pay defendant insurer any premiums for insurance in favor of Elliott.

The third declaration, again by the assistant manager of defendant's group accounting department, averred that declarant had received the two statements above referred to; that no subsequent statement obtained from any source had ever included the name of Elliott; that the only premium payment ever received on behalf of Elliott was that accompanying the statement of premiums due as of April 1, 1954.

Plaintiff filed a counterdeclaration averring that clerical error had resulted in a failure to furnish proper or necessary information relative to Elliott's insurance, a failure to make the required premium payments on his behalf, and an erroneous report that his insurance had been terminated. It was further averred that Elliott had not left the employ of the Oroweat Baking Company of San Francisco on or about April 10, 1954, but had remained in its employ until the date of his death, on February 24, 1957.

The trial court found that the declarations filed by defendant stated facts within the knowledge of the declarants which showed that the action had no merit and that the declaration of plaintiff presented no triable issue of fact. The court accordingly granted defendant's motion for summary judgment and entered judgment for defendant.

█ It is settled that the granting of summary judgment is proper only if the affidavits of the moving party would be sufficient to sustain judgment in his favor and the affidavits of his opponent are not sufficient to raise a triable issue of fact. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 261 [223 P.2d 224].) █ Since the procedure is a drastic one, it must be used with caution in order that it may not become a substitute for existing methods for the determination of factual issues. (*Hatch* v. *Bush* (1963) 215 Cal.App.2d 692, 701-702 [30 Cal.Rptr. 397].) █ The trial court, in passing upon such a motion, must construe the affidavits of the moving party strictly and those of his opponent liberally. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) Any doubts must be resolved against the moving party (*Family Service Agency of Santa Barbara* v. *Ames* (1958) 166 Cal.App.2d 344, 348 [333 P.2d 142]) and the affidavits of his opponent must be accepted as true and need not be composed wholly of strictly evidentiary facts (*Desny* v. *Wilder, supra,* at p. 725; *Eagle Oil & Ref. Co.* v. *Prentice, supra,* at p. 556.) █ In determining whether or not triable issues

are presented, the court may also consider the allegations of the pleadings to the extent that they are not controverted by the affidavits of either side. (*Pappas* v. *Union Bond & Trust Co.* (1960) 186 Cal.App.2d 699, 701 [9 Cal.Rptr. 218].)

█ Where the terms of a contract are at issue and any of its provisions are ambiguous or uncertain, the trial court ought not to grant summary judgment but should allow the parties a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 443-444 [116 P.2d 62].)

█ Whether the summary judgment was properly granted turns upon the clerical error provision of the group insurance policy issued by respondent. This provision is one of several grouped under the general heading "Insuring Provisions Applicable to Sub-Groups." It is preceded by provisions dealing with the eligibility of a subgroup to obtain insurance, the manner in which a particular subgroup may qualify for insurance, the effective date of insurance with respect to subgroups, and the manner in which the insurance of a subgroup may be terminated. The clerical error provision has been set forth above.

In view of the wording of the provision itself and the context in which it appears, we are convinced that the word "insurance" as employed in the first sentence of the provision refers to the insurance of an entire subgroup rather than of an individual. It would accordingly have no bearing upon the issues raised by appellant's complaint. The second sentence of the provision, however, is expressly made applicable to "The insurance of any individual" and provides that such insurance shall not terminate in the event that the subgroup, due to clerical error, fails to make the required premium payments or erroneously reports a termination of insurance.

In order to bring herself within this provision, appellant alleged in her second amended complaint that the Oroweat Baking Company of San Francisco and the Oroweat Oakland Bakery were in fact the same firm, but that the San Francisco company, following Elliott's transfer to Oakland, had by virtue of a clerical error terminated his employment, established him as an employee of the Oakland bakery, and failed to make any further premium deductions on his behalf.

The three declarations filed by respondent in support of its motion for summary judgment in no way controvert these

allegations. Although the second of respondent's declarations does aver that Elliott's employment with the Oroweat Baking Company of San Francisco was terminated on or about April 10, 1954, this averment is entirely consistent with the complaint and clearly does not conflict with the allegation that it was *by virtue of a clerical error* that the Oroweat Baking Company of San Francisco terminated Elliott's employment and failed to make any further premium deductions on his behalf. The remaining two declarations filed by respondent are similarly in accord with the allegations of the complaint and merely establish that subsequent to the month of April 1954, Elliott's insurance premiums were unpaid and his name was excluded from the list of employees enrolled in the group insurance program.

Under such circumstances, the uncontroverted allegations of appellant's complaint, if proved, might well bring her within the clerical error provision of the policy and entitle her to the relief prayed for. It follows that respondent's declarations were insufficient to sustain judgment in its favor, and it is therefore unnecessary to consider appellant's counterdeclaration. (*Pappas* v. *Union Bond & Trust Co., supra,* at p. 702.)

Judgment reversed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied April 10, 1964, and respondent's petition for a hearing by the Supreme Court was denied May 6, 1964.