[Civ. No. 25062.    First Dist., Div. Two.    Apr. 29, 1969.]

JULIA G. ELLIOTT, Plaintiff and Appellant, v. OCCI-
DENTAL LIFE INSURANCE COMPANY OF CALI-
FORNIA, Defendant and Respondent.

Maurice C. Ryan and Kevin P. Ryan for Plaintiff and Appellant.

Sullivan, Roche, Johnson & Farraher, Sullivan, Roche & Johnson, Theodore A. Kolb and Ronald H. Kahn for Defendant and Respondent.

SHOEMAKER, P. J.—On a prior appeal from a summary judgment entered in favor of defendant, we reversed the judgment and held that plaintiff was entitled to a trial on the question as to whether the policy issued to plaintiff's husband had remained in effect under the clerical error provision contained therein. (*Elliott* v. *Occidental Life Ins. Co.* (1964) 225 Cal.App.2d 510 [37 Cal.Rptr. 525].)

We do not set forth the pleadings as the opinion heretofore rendered presents them fully.

Upon remand, the case proceeded to trial before a jury, and the following evidence was produced:

On April 1, 1954, while he was an employee of the Oroweat Baking Company of San Francisco, Robert Elliott was issued an individual certificate of life insurance naming plaintiff as his beneficiary. The insurance in question was made avail-

able to Elliott under a pre-existing master policy which had been issued to the Western Conference of Teamsters for Bakery Driver-Salesmen in Northern California. The Oroweat Baking Company of San Francisco was a qualified sub-group under the master policy with the union.

The Oroweat Baking Company of San Francisco made one premium deduction on Elliott's behalf and duly forwarded same to defendant insurer. However, Elliott was thereafter transferred to the Oroweat Oakland Bakery, and the Oroweat Baking Company of San Francisco immediately ceased to make any further premium deductions on his behalf. Although the Oroweat Oakland Bakery was also a qualified sub-group covered by the master policy with the union, the Oroweat Oakland Bakery made no premium deductions on Elliott's behalf following his transfer.

Elmer Fisher, who was controller of the Oroweat Baking Company of San Francisco in 1954, testified that the company was a corporation, whereas the Oroweat Oakland Bakery was a copartnership. However, the same three individuals owned all of the stock in the corporation and also constituted the three partners of the Oakland company. He further stated that the two companies used trucks of the same color and distributed the identical bread. All of the baking was done by the San Francisco company, and the Oakland company acted solely as a distributor. Both companies were represented by the same attorney, and the records and correspondence of both companies were kept in the San Francisco office. Drivers employed by the two companies received the same rate of pay, and their paychecks issued from the San Francisco office. Fisher further stated that when employees of the Oakland company went on vacation, employees of the San Francisco company would be "loaned" to the Oakland company to serve as vacation relief. Employees of both companies were invited to a joint Christmas party. Fisher also testified that when the Oakland copartnership was dissolved in 1956 or 1957, it was taken over by the San Francisco corporation.

Fisher stated that when Elliott was transferred from San Francisco to Oakland, he was never notified that his insurance premium deductions would no longer be made by the San Francisco company. As far as Fisher knew, Elliott had never authorized the termination of his life insurance. Fisher admitted having told plaintiff that in his opinion the San Francisco company was guilty of negligence because it failed, following Elliott's transfer to Oakland, to arrange for the Oak-

land company to "follow through" with Elliott's premium deductions.

At the conclusion of the trial, pursuant to the stipulation of the parties, the jury was instructed to answer two ultimate questions of fact: (1) whether the Oroweat Baking Company of San Francisco, a corporation, and the Oroweat Oakland Bakery, a copartnership, were in fact the same firm, and (2) whether the Oroweat Baking Company of San Francisco had, by virtue of a clerical error, terminated Elliott's employment and failed to make any further premium deductions on his behalf. The jury answered both questions in the affirmative, and in accordance with such special verdict the court entered a money judgment in favor of plaintiff and against defendant in the amount of $8,320 plus interest.

Defendant subsequently moved for judgment notwithstanding the verdict on the grounds that the court ought to have granted defendant's prior motion for a directed verdict and that there was no evidence in support of either of the jury's special findings. The court granted the motion and entered judgment for defendant. Plaintiff appeals therefrom.

■ It is settled that a motion for judgment notwithstanding the verdict may properly be granted in favor of a defendant only when, disregarding the conflicting evidence and indulging in every legitimate inference in favor of the plaintiff, it can be said that there is no evidence of a substantial nature to support the verdict. (*Quintal* v. *Laurel Grove Hospital* (1964) 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161].)

■ The jury found that the San Francisco and Oakland companies were in fact the same firm. We have examined the record and find sufficient evidence in support thereof. Both parties apparently agree that the rules developed in connection with the *alter ego* doctrine are applicable, at least by analogy, even though neither of the companies are defendants in this action and the situation is therefore not one where the plaintiff was seeking to pierce the corporate veil and impose liability upon one company for the acts of the other. The cases dealing with the doctrine of *alter ego* demonstrate that there were sufficient factors present in this case to justify treating the San Francisco and Oakland companies as one, rather than as two separate entities. In *Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838-840 [26 Cal.Rptr. 806], the court undertook an exhaustive review of prior decisions on the subject and indicated that the following factors, present in the instant case, were pertinent to the deter-

mination of whether two companies should be treated as one: common equitable ownership and control over the two companies by the same individuals, the use of the same office or business location by both companies and the use of the same employees and attorney by both companies. In addition, other factors which were present in the instant case and were suggestive of the unity of the two companies included the use of identically colored trucks distributing identical bakery products, the giving of a common office party for the employees of both companies and the fact that the two companies were ultimately merged into one sometime in 1956 or 1957. Under the circumstances here present, it cannot be said that the evidence was insufficient to support the jury's finding that the San Francisco corporation and the Oakland copartnership were in fact the same firm.

██ Although defendant insurer asserts that separate business entities cannot be treated as one in the absence of a showing of bad faith, the proper rule is that actual fraud need not be shown and it is sufficient that a refusal to recognize the unity of the two companies would bring about inequitable results and would permit what would be fraud or injustice, if accomplished. (*Claremont Press Publishing Co.* v. *Barksdale* (1960) 187 Cal.App.2d 813, 817 [10 Cal.Rptr. 214]; *Talbot* v. *Fresno-Pacific Corp.* (1960) 181 Cal.App.2d 425, 431 [5 Cal. Rptr. 361].) In the instant case, it is apparent that a failure to recognize the two companies as one would have the inequitable result of depriving Elliott of his life insurance coverage merely because he complied with his employer's orders to transfer the locus of his employment from San Francisco to Oakland.

Defendant also contends that, despite its stipulation at trial to submit the question to the jury, the issue of the identity of the two companies was one of law which should have been determined by the court. This is not the rule. The question is not one of law, and the conclusion of the trier of fact will not be disturbed if supported by substantial evidence. (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co.* (1963) 214 Cal. App.2d 826, 852 [29 Cal.Rptr. 887].)

██ Turning next to the jury's second finding that it was by virtue of a clerical error that the Oroweat Baking Company of San Francisco terminated Elliott's employment and failed to make further premium deductions on his behalf, defendant asserts that the uncontroverted evidence shows that the San Francisco company performed both these acts delib-

erately and knowingly and because of the fact that Elliott had been transferred from San Francisco to Oakland. It follows, according to defendant, that the San Francisco company did not make a "clerical" error but a mistake or omission involving the exercise of judgment or discretion. This argument cannot be upheld in the face of the jury's finding, based upon substantial evidence, that the San Francisco and Oakland companies were in fact the same firm and Fisher's admission to plaintiff that the San Francisco company was negligent in failing to arrange for the Oakland company to handle Elliott's premium deductions. Stated differently, the evidence is sufficient to support a finding that the San Francisco company made a clerical error which consisted of ceasing to make premium deductions on Elliott's behalf without first having arranged for the Oakland company to assume said responsibility.

The record contains sufficient evidence in support of the jury's two special findings, hence the granting of defendant's motion for judgment notwithstanding the verdict was improper.

The judgment for defendant is reversed with directions to the trial court to reinstate the judgment for plaintiff previously entered in accordance with the jury's findings.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied May 29, 1969, and respondent's petition for a hearing by the Supreme Court was denied June 25, 1969.