[Civ. No. 12374. Third Dist. Jan. 6, 1971.]

DAUGHERTY COMPANY, INC.,
Plaintiff, Cross-defendant and Appellant, v.
KIMBERLY-CLARK CORPORATION, Defendant and Respondent;
H. K. FERGUSON COMPANY,
Defendant, Cross-complainant and Respondent.

## Counsel

Dinkelspiel & Dinkelspiel, John F. Taylor and Carr & Kennedy for Plaintiff, Cross-defendant and Appellant.

Thelen, Marrin, Johnson & Bridges, William D. Ginn and Philip R. Placier for Defendant and Respondent and for Defendant, Cross-complainant and Respondent.

## OPINION

**BRAY, J.**[*]—Plaintiff appeals following dismissal of its complaint after an order for summary judgment in favor of defendants.

### QUESTION PRESENTED

Is there a triable factual issue?

### RECORD

Plaintiff agreed to furnish as a subcontractor a portion of the labor and materials for the construction of a pulp and paper mill on land owned by defendant Kimberly-Clark Corporation near Anderson. Upon completion of the work plaintiff filed this action, alleging two counts: the first against defendant Kimberly-Clark Corporation (Kimberly-Clark) for foreclosure of a mechanic's lien, and the second against the H. K. Ferguson Company (Ferguson) for the balance alleged to be due plaintiff under an agreement to work as a subcontractor to Ferguson in the construction of said mill. Plaintiff amended its complaint to add a third count for alleged breach of contract by Ferguson and a fourth count on a common count for the reasonable value of supplies, materials and labor furnished to Ferguson.

Both defendants moved for summary judgment. Defendant Ferguson cross-complained against plaintiff, but stipulated that if its motion for summary judgment was granted, it would dismiss the cross-complaint.

After a hearing the trial court sustained the motions for summary judgment and the judgment dismissing plaintiff's complaint followed.

### TRIABLE ISSUES OF FACT

■ It hardly needs citation of authorities that on a motion for summary judgment the only "matter to be determined by the trial court . . . is whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself. ■ Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact." (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271].)

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

There were before the court many pages of affidavits, declarations and answers to interrogatories. It is unnecessary to set forth the details thereof. Suffice it to state that there was a conflict of facts on all the issues before the court.

The issues as to which the trial court found no issues of fact and as to which plaintiff claims that there were such issues of fact follow:

1. Whether the changes in the work were required and whether because of them there was an implied abandonment of the contract by the parties.

The original contract price was $2,933,610. The extras charged were $1,617,629.21, making a total of $4,551,239.21. There was paid or credited to plaintiff $3,709,055.23 (an increase of $775,445.23 over the contract price).

The affidavit of E. M. Carpenter claimed that there were 799 "A" invoices, 1,150 "F" invoices and 78 memoranda billings for extra compensation because of changes in drawings, work in the field and charges for such items as equipment repairs.

Defendants approved and authorized charges for $875,446.23 over the contract price. In a letter from plaintiff to Ferguson concerning the problems encountered in the work it was stated that "the job was completely redesigned after the contract was placed."

The manager of the Industrial Piping Division of Grinnell Corporation, plaintiff's parent company, stated: that he had participated in the construction of many paper mills and that he had never seen anything comparable to the changes ordered by defendants; that the project was the most poorly engineered and designed that he had ever seen; and that this poor engineering resulted in enormous changes ordered by defendants and was contrary to normal and reasonable construction practices when the owner requests a lump sum contract.

Some eight months after the contract was signed new procedures for handling the various change orders were instituted since construction drawings had not been developed and design concepts had not been established. Kimberly-Clark would order changes and then refuse payment on the grounds that the contractor was responsible for checking measurements (construed by Kimberly-Clark to mean that the contractor was required to correct discrepancies and make revisions without compensation; construed by the contractor and subcontractor to mean to make correct and proper installation). There was evidence that it was inconceivable that anyone could expect a contractor to anticipate the many changes in the drawings; that

Kimberly-Clark took exception to the amount indicated for the field change notices and had completely disagreed with the notices. The vice president of defendant Ferguson stated that almost all of the construction drawings had been altered, upgrading the mechanical and electrical installation, adding thousands of dollars to the cost of the work. The final drawings differed markedly from those offered for bid purposes, increasing the costs substantially. ■ There was a triable issue of fact as to whether these changes for which plaintiff was seeking compensation were required. Moreover, because of the tremendous number of changes, there was an issue as to whether the contract had been abandoned by the parties and they proceeded apart from the contract. There was evidence that the job was completely redesigned after the contract was entered into.

■ Abandonment of a contract may be implied from the acts of the parties. (*Opdyke & Butler* v. *Silver* (1952) 111 Cal.App.2d 912, 916 [245 P.2d 306].) Abandonment of the contract can occur in instances where the scope of the work when undertaken greatly exceeds that called for under the contract. In *Opdyke* the written contract provided that all change orders should be approved by the architect, should be in writing and the contract should be adjusted accordingly before the work was done. Yet, because the parties consistently ignored this requirement in material part, the court allowed a recovery on quantum meruit. ■ In the instant case the parties consistently ignored the procedures provided by the contract for the doing of extra work.

■ The trial court throughout the hearing demonstrated its failure to comprehend the nature of the summary judgment procedure as it passed upon the fact issues presented. For example, it stated "The theory advanced by plaintiff that there was 'implied abandonment' of the contract is without merit. There is no doubt in the mind of the Court that it would not permit recovery to plaintiff on this theory *based upon the evidence and facts* that have been so thoroughly presented in this motion and the numerous prior proceedings had herein." (Italics added.) As repeatedly set forth in the authorities, the power of the trial court begins and ends with a determination that there are issues of fact to be tried; here the trial court made a conclusion of law based on its interpretation of the evidence. "The court's duty is limited to the determination of whether or not factual issues are presented by the affidavits and it is no part of the court's duty to make any factual determination." (*Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229, 234 [7 Cal.Rptr. 497].)

The court seemed to think that by continuing to perform the work plaintiff was bound by the contract. Performing the work prescribed by the contract and the changes does not preclude the possibility that the labor and

materials furnished were outside the contemplation of the parties when the bid was made and the contract signed. (See *Opdyke & Butler* v. *Silver, supra,* 111 Cal.App.2d 912.)

2. Were the decisions of Kimberly-Clark's chief engineer with respect to plaintiff's compliance with the contract documents a condition precedent to plaintiff's right of recovery?

The contract vested defendants' chief engineer with the authority to make decisions where the drawings and specifications were incomplete and needed to be revised or perfected, the contract providing that the engineer should make decisions on all claims of the subcontractor and on all other matters relating to the execution and progress of the work or the interpretation of the contract documents. His decisions "in matters relating to quality of workmanship" are to be final. With this exception, the engineer's decisions were made subject to arbitration. There was evidence that none of the claims disallowed by the engineer pertained to "quality of workmanship."

Defendants did not rely on the authority claimed to have been given the engineer by the contract until five and one-half years after claims were presented. Although the quality of plaintiff's workmanship was never questioned, the trial court held that the project engineer's decisions were final as to all matters. ■ Plaintiff raised the issue, ignored by the court, that its claims for extra work were outside the scope of the contract documents. The contract required the engineer to make decisions on all claims of the contractor and on all matters relating to the execution and progress of the work or the interpretation of the contract documents within a reasonable time. If he did not do so for 10 days, the contractor could demand arbitration. In practice the engineer did not make decisions within 10 days. The evidence was that in many respects the procedures required by the contract as to claims were ignored in practice. Yet, the court, in spite of the factual issues presented as to abandonment and waiver, ruled that there was no abandonment or waiver. (See *General Insurance Co.* v. *Commerce Hyatt House,* 5 Cal.App.3d 460, 469 [85 Cal.Rptr. 317].)

■ ". . . Where the terms of a contract are at issue and any of its provisions are ambiguous or uncertain, the trial court ought not to grant summary judgment but should allow the parties a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto." (*Elliott* v. *Occidental Life Ins. Co.* (1964) 225 Cal.App.2d 510, 515 [37 Cal.Rptr. 525].)

3. The trial court granted the summary judgment on the further basis that the contract provisions required arbitration as a condition precedent to

maintaining legal action. Plaintiff never demanded that arbitration proceedings be instituted. Arbitration procedures are no more binding on the parties to a contract than other contract terms. ■ "[T]he arbitration agreement . . . may have been rescinded, repudiated or avoided. The parties to such an agreement have power to rescind it by mutual agreement to that effect. The ordinary arbitration statutes do not deprive them of this power." (*Local 659, I.A.T.S.E.* v. *Color Corp. Amer.* (1956) 47 Cal.2d 189, 195 [302 P.2d 294].)

■ Whether or not the parties have waived arbitration procedures (a separate question from whether or not the parties have abandoned the contract in which these procedures are embodied) is ordinarily a question of fact. (*Tas-T-Nut Co.* v. *Continental Nut Co.* (1954) 125 Cal.App.2d 351, 355 [270 P.2d 43].) Here defendants did not raise the arbitration provisions until over three years after suit was filed. None of the claims were at any time submitted to arbitration. The evidence in this case discloses that the magnitude of changes in the project precluded adherence to claims procedures in order that construction of the project might be completed as nearly as possible as scheduled. After suit was filed defendants paid plaintiff $614,000 on disputed claims. If defendants were convinced that arbitration as a condition precedent to filing suit had not been waived, no reason is seen why they made this payment.

■ Clearly a fact question is presented whether the parties waived the arbitration terms, abandoned the contract, or replaced it or any of its terms by means of an executed oral agreement, or one implied by the conduct of the parties.[1]

4. Another issue of fact appearing in the evidence is whether the written contract was modified by executed oral agreements. This can be a question of fact. (*Kelley* v. *R. F. Jones Co.* (1969) 272 Cal.App.2d 113, 121 [77 Cal.Rptr. 170].) ■ An agreement to modify a written contract will be implied if the conduct of the parties is inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify it. (See *Garrison* v. *Edward Brown & Sons* (1944) 25 Cal.2d 473, 479 [154 P.2d 377].)

■ Defendants' contention that the abandonment issue was an after-

---

[1]In *Pneucrete Corp.* v. *United States Fid. & Guar. Co.* (1935) 7 Cal.App.2d 733 [46 P.2d 1000], the defendants sought to raise the arbitration provisions in their contract with plaintiff 24 hours prior to trial. The court held that the defendants had waived any right to arbitration. "The laws with reference to arbitration were passed primarily for the purpose of expediting and facilitating the settlement of disputes and to overcome delays caused by litigation. They are not enacted to provide a means of creating delay. . . ." (P. 740.)

thought is unfounded. It was raised in the complaint by the pleading of the common count. (See *Benson Elec. Co.* v. *Hale Bros. Assoc., Inc.,* 246 Cal. App.2d 686, 697 [55 Cal.Rptr. 73].) That case held further that "extras" were in effect a *"separate implied contract"* under which a reasonable price must be paid for extra work.

5. Plaintiff contends that the provisions of the contract are ambiguous and that there is a triable issue of fact as to the manner in which the parties interpreted them.

 The court apparently ignored the issues of fact concerning whether defendants' failure to comply with certain aspects of the claims procedures stated in the contract was due to circumstances which would excuse compliance and whether defendants by their conduct waived compliance therewith.

Even assuming, as contended by defendants, that the facts presented by plaintiff were either admitted or not controverted by defendants, the trial court acted erroneously. It disregarded those facts, taking the position that as a matter of law the failure of plaintiff to comply strictly with the provisions of the contract prevented recovery regardless of the facts bearing upon abandonment, waiver and the other contentions made by plaintiff.

Even as to moneys sought by plaintiff, as to which plaintiff claimed that defendant Ferguson had expressly agreed to pay, the trial court held that there was no triable issue of fact. The trial court, in effect, violated the principles of a summary judgment procedure, namely, that "[a] summary judgment does not contemplate or connote findings of fact" (*Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419, 432 [28 Cal.Rptr. 757]); that "it is no part of the court's duty to make any factual determination" (*Newport* v. *City of Los Angeles, supra,* 184 Cal.App.2d at p. 234); and that the "purpose of the summary judgment procedure is *not to try the issues,* but merely to determine *whether there are issues to be tried.*" (*Orser* v. *George* (1967) 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708].)

Judgment is reversed.

Pierce, P. J., and Regan, J., concurred.