MOTOWN RECORD
CORPORATION, Plaintiff,

v.

MARY JANE GIRLS, INC., Defendant.

No. 86 Civ. 6814 (RWS).

United States District Court,
S.D. New York.

Dec. 22, 1986.

Sidley & Austin by Robert A. Downing, New York City, Elliot Chaum, Vice President & Gen. Counsel, Motown Record Corp., Los Angeles, Cal., for plaintiff; Marc J. Gottridge and James Arden, New York City of counsel.

Gross, Shuman, Brizdle, Laub & Gilfillan, P.C., Buffalo, N.Y., Kronish, Lieb, Weiner & Hellman, New York City by John Hartje, for defendant; Irving M. Shuman and Leslie M. Greenbaum, Buffalo, N.Y., of counsel.

SWEET, District Judge.

Plaintiff Motown Record Corp. ("Motown") moved this court for an order of summary judgment under Rule 56, Fed.R. Civ.P., to enforce its contract rights with defendant Mary Jane Girls, Inc. ("MJG"), and the four individual performers who together constitute the musical performing group known as "The Mary Jane Girls." For the reasons set forth below, the motion is denied.

**Facts**

On February 3, 1983, the parties executed a "Memorandum Agreement" (the "Agreement") to which was annexed Exhibit B, the "Artist's Inducement and Agreement" ("Artist's Inducement"). The Agreement provides that MJG will provide Motown with a "Master" recording of a record album during each of four time periods set forth in the Agreement. A Master is a long-playing album ("LP") which consists of "entirely 'in studio' recordings of newly recorded material embodying the vocal performances of [the Mary Jane Girls]." The Agreement provided for the applicability of California law. The Artist's Inducement between Motown and the individual performers who make up the "Mary Jane Girls" is signed by all of the performers, by Motown, and by MJG and provides:

(d) if [MJG] shall fail or refuse to convey any of [the performer's] recordings or services or if [MJG] becomes insolvent or

bankrupt (whether voluntarily or involuntarily) and/or is placed or places itself in a position so that it cannot perform the requirements of the Agreement or if for any reason whatsoever [MJG] is unable to supply [the performer's] services in accordance with the Agreement, [the performer] will render her services directly to [Motown] on the terms and conditions of the Agreement....

Motown is a corporation organized under the laws of Michigan, with its principal place of business in the State of California. MJG is a corporation organized under the laws of New York, with its principal place of business in the State of New York.

During the option period of the Agreement that commenced on June 13, 1985 (the "Option Period"), MJG failed to deliver the master recording. Also during the Option Period, the deadline for delivery of the master recording had effectively been extended by the parties' agreement to July 15, 1986.

In August, 1986, MJG delivered to Motown an exemplar cassette that is not the master recording and is not suitable for the manufacture of commercially saleable records.

Joanne McDuffie, p/k/a JoJo, a/k/a Joanne Funderburg, ("JoJo") is a "key member" of The Mary Jane Girls recording group, as designated under the terms of the Agreement. JoJo and MJG are parties to an exclusive recording agreement dated December 25, 1982 (the "December 1982 Agreement"), which requires, among other things, that JoJo render her exclusive services as a recording artist to MJG at such times and places as directed by MJG, and to perform such services in a diligent and professional manner.

For the period May 21, 1986, through and including August 10, 1986, JoJo withheld her services and refused to perform as a recording artist for MJG. Motown was notified on July 3, 1986, by MJG that the delivery of the LP would be delayed due to JoJo's refusal to perform services and was aware as early as May 21, 1986 that JoJo was refusing to record. On August 6,

MJG wrote Motown proposing additional payment to JoJo. Motown did not execute the acceptance set forth at the foot of the letter.

After JoJo refused to perform on August 8 and 9, 1986, she reported to the studio on August 10, 1986, to perform vocal recording services in connection with the LP. JoJo performed additional vocal recording services in connection with the LP on August 13, 14 and 15, 1986, as well. On or about August 15, 1986, a preliminary rough cassette consisting of substantial portions of the LP was forwarded to Motown at Motown's request, and in conformance with the previously established practices of the parties. With the exception of "Walk Like A Man," recorded by MJG in the fall of 1985, the recordings on this preliminary cassette had neither completed the production process, nor been mastered. Motown did not voice any disapproval of the selections included.

On August 21, 1986, MJG and JoJo executed certain agreements which, among other things, revised JoJo's compensation under the terms of the December 1982 Agreement. On August 21, 1986, MJG forwarded a revised "Letter of Direction" to Motown, containing certain revisions requested by Motown from the August 6, 1986 draft "Letter of Direction." MJG has alleged that Motown made the payment to JoJo pursuant to this "Letter of Direction" after August 21, 1986 and this allegation is not refuted.

In addition, MJG alleges that with the knowledge and approval of Motown, it continued to approve purchase orders for materials and/or personnel engaged in production of the LP, to solicit and receive data on label copy and credits for the LP during this period, and requested that MJG consider adding a further recording to the LP of an "old song" first recorded and released in 1963 by the "Four Seasons," to wit, "Big Girls Don't Cry." These allegations are not denied by Motown.

On September 2, 1986, Motown advised MJG that no further costs would be ap-

proved for the LP, and on September 5, 1986, Motown commenced the instant action.

On September 26, 1986, final production of the LP was completed consisting of newly recorded and never-before released recordings of selections embodying the vocal performances of Mary Jane Girls. An issue of fact arose on oral argument as to whether one selection, "Hollywood," was newly recorded, and on October 1, 1986 MJG sent Motown a reference disc and reference cassette of the LP recorded from the masters. Except as noted, these facts are not disputed.

**The Issue**

According to Motown, MJG failed to perform the Agreement in timely fashion and under (d) of the Artist's Inducement quoted above, it is entitled to substitute a producer of its own selection to obtain performance of the Agreement. MJG maintains that Motown under the facts set forth above waived the timeliness requirement of the Agreement and that (d) of the Artist's Inducement has not been breached. In addition, MJG urged on argument that the inference to be derived from Motown's conduct is that it seeks only to eliminate MJG as producer under the Agreement at the behest of JoJo.

**Conclusions**

■ While it is undisputed that no formal or written agreement exists extending the option period beyond July 15, the Agreement does not contain a prohibition against modification except in writing, and it is MJG's position that the conduct of Motown described above constituted a waiver of the Agreement's Option Period and its performance on September 2 was timely. Although neither party has cited any California authorities on this subject, California law permits the modification of a contract by conduct. *See Daugherty Co. v. Kimberly-Clark Corp.*, 14 Cal.App.3d 151, 158, 92 Cal.Rptr. 120, 124 (Cal.Ct.App. 1971); *Barnes v. Western Pioneer Ins. Co.*, 151 Cal.App.2d 669, 311 P.2d 871 (Cal. Dist.Ct.App.1957). Motown has thus extended the period for performance.

■ Under *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. Oct. 1986), all inferences shall be drawn in favor of the party opposing the motion. Further, this record is barren of facts which would establish the term of the extension granted by Motown's conduct. According to MJG, the performance on October 2 was reasonable in relation to Motown's payment to JoJo late in August not established on this record. Therefore, as to the date for performance, a factual issue exists barring summary judgment.

IT IS SO ORDERED.