Filed 1/30/25  Dean v. Great American Pool Care CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KIRK DEAN,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>GREAT AMERICAN POOL CARE, LLC,<br><br>    Defendant, Cross-complainant and Respondent;<br><br>REGINA BUSH-DEAN,<br><br>    Cross-defendant and Appellant;<br><br>MICHAEL L. MEDKIFF,<br><br>    Defendant and Respondent. | D082245<br><br><br><br>(Super. Ct. No. CIVDS1721072) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Brian S. McCarville, Judge.  Affirmed.

Zarmi Law and David Zarmi for Plaintiff, Cross-defendant, and Appellant Kirk Dean, and Cross-defendant and Appellant Regina Bush-Dean.

Yadegar, Minoofar & Soleymani, Pedram Minoofar; Dykema Gossett, Jeffrey G. Huron and Cory L. Webster for Defendant, Cross-complainant and Respondent Great American Pool Care, LLC and Defendant and Respondent Michael L. Medkiff.

## INTRODUCTION

In 2007, Kirk Dean (Dean) and his wife Regina Bush-Dean (collectively, the Deans), along with their friend George Tillis (Tillis), purchased the client list and other assets from a residential pool maintenance company called Great American Pool Care, LLC (Great American). To finance the transaction, the Deans and Tillis borrowed $560,000[1] from Great American. Financial challenges beset the enterprise and neither the Deans, nor Tillis, could make payments on the note. While unable to pay off on time what he thought was his share, Dean continued to make payments for years after the 2010 loan maturity date.

Then in 2017, after sending Great American a payoff demand, and determining the parties disagreed on the amount owed, Dean sued the company for declaratory relief. Great American countersued for declaratory relief and breach of contract. The trial court found that the Deans owed Great American $560,000 plus interest (less any payments) because the loan obligation was joint and several with Tillis,[2] the loan agreement was orally modified, and estoppel rules prevented Dean from denying a loan modification occurred.

---

[1]    The entire cost for the assets was $660,000.

[2]    By the time Dean filed his lawsuit, Tillis had disappeared from the business and was not paying his share of the financial obligation to Great American. Great American separately sued Tillis in Nevada, winning a default judgement. Tillis is not part of this appeal.

On appeal, the Deans argue the trial court erred in finding joint and several liability and that, in any event, Great American's breach of contract claim was time barred.  We disagree on both points and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Financing to Purchase Great American*

In July 2007, Dean, Tillis, and Great American executed a security agreement for a $560,000 loan.  The security agreement recited that Dean and Tillis, as the "Borrowers," were "indebted" to Great American, the "Lender," for "$560,000.00 (the 'Loan')."  The Loan was "[e]videnced by two separate Promissory Notes with a principal balance of $280,000.00 each."  It further provided that "[t]he Lender has required as a condition to making the Loan to Borrowers that (among other things) the Borrowers execute this Security Agreement."  Finally, it provided that if Great American were to collect on the collateral, Dean and Tillis would "remain jointly and severally liable to [Great American] for any deficiency" between the amount owed and the secured property's value.

At the same time, Dean, Tillis, and Great American executed escrow instructions stating that Dean and Tillis would "hand [Great American] the sum of $660,000.00, constituting the TOTAL CONSIDERATION."  The escrow instructions reflected that Dean and Tillis would provide $100,000 in cash and each buyer would provide collateral for 50 percent of the loan.  The escrow instructions referenced two promissory notes, with one executed by Dean and the other by Tillis.  Each promissory note was for $280,000 with eight percent annual interest.  Each note required at least a $1,866.67 monthly interest-only payment until the notes' maturity in August 2010.  As security for $280,000 of the loan, the Deans executed a deed of trust for their house.  While the loan maturity date came and went, Dean continued to

3

make monthly payments to Great American. Finally, in 2017, Dean made a Civil Code section 2943[3] demand for a payoff amount. He did not receive it. Instead, the parties began discussing what each thought Dean owed.

B.     *Procedural History*

In October 2017, Dean sued Great American and Great American's principal, Michael Medkiff (Medkiff), alleging they violated section 2943 by failing to provide a loan payoff demand statement and seeking a declaration that Dean had paid off his entire obligation on the loan.

In February 2018, Great American cross-complained against the Deans seeking repayment of the loan and judicial foreclosure on the real property the Deans offered Great American as collateral.

1.     *The Deans' Motion for Summary Judgment*

The Deans moved for summary judgment on the cross-complaint, asserting various legal arguments, including that the four-year statute of limitations had expired on Great American's breach of contract claim. They argued that the claim was time barred because the loan contracts matured in 2010 and were not fully paid then, yet Great American did not file its cross-complaint until after Dean sued in 2017. The Deans contended that the agreement to extend the loan's maturity date, while Dean made modified monthly payments, was unenforceable.

The trial court denied the Deans' motion, finding that there were triable fact issues on all points.

2.     *Trial Evidence*

The trial court conducted a three-day bench trial.

---

3     All undesignated statutory references are to the Civil Code.

### a. *Dean's Testimony and Evidence*

Dean testified that he understood that each borrower was responsible for one-half the purchase price of Great American's assets, or $280,000. Dean signed a note secured by deed of trust, using the Deans' house as collateral securing the $280,000. The loan required $1,8667.67 in minimum monthly interest-only payments.

Dean understood there was to be a lump sum payoff of the loan in August 2010, but Great American never informed him of the amount due. Instead, Dean told Medkiff and Don Ticinovich (Ticinovich), co-owner of Great American, the pool business was "struggling" and "never worked from '07 until this period of time." He sought to "give the business back or file some kind of case against them." He also wanted to know the balance so that he could potentially keep the business if Great American pursued Tillis.

Dean never told Medkiff or Ticinovich that he would pay off Tillis's $280,000 note and denied that he requested an extension of the maturity date. He never received any history of payments or a loan balance from Great American or any other source.

In February 2012, Dean asked Ticinovich for an update on whether Great American would pursue Tillis "for the balance [Tillis] owes" and asked "to get together to discuss the restructuring of [Dean's] balance." In March 2012, Ticinovich responded that they served Tillis with a lawsuit and had a court date scheduled.

Beginning in 2016, Dean sought to refinance his house to pay off a line of credit and obtain a lower interest rate on his mortgage. Despite repeated requests from Dean and an official payoff demand from Dean's potential lender, Medkiff did not respond until August 2017 with an unofficial payoff demand of $395,000, including $11,400 in late payment penalties. Dean was

5

surprised it was more than the original note, although he admitted he had "not paid to lender the sum of $280,000 plus interest, late charges and all other fees due under the promissory note."  He also admitted that the maturity date was the only term of the security agreement that was altered.

b. *Great American's Testimony and Evidence*

Medkiff testified that Dean approached him in 2010 and told him that the business was not doing well, that he could not pay off the loan, and that he needed a reduction in the monthly payment amount.  Medkiff agreed to a reduction and extension of the loan on the condition that the reduction was temporary, and that Dean would still "eventually" pay off the loan.

In 2011, Dean told Medkiff that Tillis was not going to pay his part of the secured note and encouraged Medkiff to sue Tillis for what "he regarded as Mr. Tillis's part of the 560,000-dollar note."  Dean told Medkiff that he did not have the money to pursue Tillis.  Great American sued Tillis and received a default judgment but did not recover anything because Tillis declared bankruptcy.

In 2013, Medkiff agreed to yet a lower monthly payment amount.  Dean reaffirmed it was temporary and that he would eventually pay off the entire debt.  In a July 2013 email, Dean wrote, "This reduced payment will only be during the warm weather months or until [I] see the monies are ok."  Medkiff testified they agreed Dean would make $2,000 per month payments "until the economy recovered, at which time Dean would pay the outstanding principal balance of the security agreement and all outstanding interest."

In 2016, after Medkiff first received Dean's payoff demand, Dean told him that he wanted Medkiff "to forgive the unsecured part of the loan and . . . to apply all the payments he made to his secured part of the loan."  Medkiff admitted that Dean first asked for a payoff amount for the $280,000 but

6

testified that he told Dean multiple times that Dean owed $395,000. Medkiff testified that Dean always argued with the amount and "said he didn't want to pay that much." Through all the payoff demand emails, Medkiff did not provide one because they "were negotiating verbally on the phone" as Dean wanted a lower amount and for Medkiff "to forgive an unsecured portion of $560,000, the total contract."

In an August 2017 email, Medkiff told Dean he had not yet submitted the payoff amount to the escrow company involved in Dean's refinancing effort. Medkiff wrote to Dean, "If you really want an 'actual' payoff number that you can really payoff I will submit a payoff of $395,000 with [the] statement [to Dean's refinance lender] to the effect that you are in default and I will not agree to a new note." Medkiff testified he had calculated the $395,000 "based on the payments and the interest calculation." Dean responded that he would not be able refinance with that large of a payoff.

Medkiff testified he "never agreed to splitting [the loan] up" and that Dean owed full interest payments on the entire $560,000 loan. He also testified that orally over the years Dean repeatedly assured Medkiff that Dean intended to pay the entire amount. Medkiff testified that the principal plus interest owed by Dean was $780,968. Over the life of the loan, Dean had paid $402,499.68 and had missed interest payments of $220,968.10. Medkiff testified that he applied Dean's "payments first to the unsecured part of the loan."

c. *Trial Briefs*

The parties submitted written closing arguments. The Deans argued that the entirety of the loan documents demonstrate that Dean and Tillis were severally liable each for $280,000, and not jointly liable for the entire amount. The Deans contended that there was no exception for oral

7

modifications because the security agreement explicitly stated that any modification had to be in writing and because no oral modification agreement was executed under Code of Civil Procedure section 1698. Even as alleged by Great American, the oral modifications had no payment terms or maturity dates and were too indefinite to be enforced. The Deans also argued that the statute of limitations barred Great American's claim for judicial foreclosure.

Great American and Medkiff argued that the loan agreement was "clear and unambiguous" and that the Deans "cannot create an ambiguity within a contract when none exists." They also contended that the oral agreement extended the loan's maturity date to July 1, 2018.

3. *Trial Court Ruling*

In its final statement of decision, the trial court found that the contract documents and trial testimony reflected that Dean and Tillis's obligation to repay the loan was joint and several.[4] The trial court found that "a joint agreement was made and that both Dean and Tillis were jointly and severally liable for any potential breach." The court adopted Great American's factual assertions that the loan terms were orally modified, at Dean's request, by extending the maturity date and by reducing the required minimum monthly payments until Dean could repay the loan fully. The court found that "Dean's conduct reflected oral agreements to modify the existing agreements as well as established conduct that estopped him from denying the agreement

---

[4] The court determined these items memorialized the transaction: "Document titled 'Escrow Instructions.' . . . Document titled 'Escrow Closing Statement.' . . . Document Titled 'Financing Statement.' . . . Document titled 'Security Agreement.' . . . Document titled 'Note Secured by Deed of Trust and Security Agreement.' ('Note'). . . . Document titled 'Deed of Trust With Assignment of Rents' dated July 16, 2007 . . . Document titled 'Assignment of Contracts.' "

8

modifications." The court found that Great American was entitled to judgment against the Deans.

## DISCUSSION

A. *Relevant Legal Principles*

" 'On appellate review, the trial court's threshold determination of ambiguity is a question of law . . . and is thus subject to [ ] independent review [citation].' . . . If parol evidence is admitted and is in conflict, the substantial evidence test applies." (*Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 625, citations omitted.)

Under section 1659, when two parties "who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." This presumption "is rebuttable but controls in the absence of evidence to the contrary." (*Douglas v. Bergere* (1949) 94 Cal.App.2d 267, 269–270 ["When controverted by other evidence and issue of fact is made for the determination of the trial court and its conclusion is conclusive upon a reviewing court unless it is clearly unsupported by substantial evidence"].)

B. *The Security Agreement Created Joint and Several Liability*

The Deans argue that Dean and Tillis were not jointly and severally liable under the loan agreement. We disagree.

Specifically, the Deans argue that the parties "unambiguously divided the $560,000 loan into two loans of $280,000 each for Tillis and Dean" and that "[i]f there was to be joint liability between Dean and Tillis, the loan would have been structured as a single loan by both of them with half secured by Dean's house and half secured by Tillis's business."

In fact, the loan documents state that the loan was $560,000 and was secured by two separate promissory notes. The security agreement

9

repeatedly refers to one loan and does not mention multiple loans. Crucially, the security agreement provided that if Great American were to collect on the collateral, Dean and Tillis would "remain jointly and severally liable to [Great American] for any deficiency." Despite this clear and unambiguous language, the Deans incorrectly argue in their opening brief that "none of the documents even mention joint liability."

In their reply brief, however, the Deans acknowledge the security agreement states that Dean and Tillis were "jointly and severally liable." They then put forward a new argument that the language was "a leftover scrivener's error." Although we are free to disregard arguments made initially in a reply brief (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158), we nevertheless note that errors in a written contract may not be disregarded unless "all parties correctly understand the contract," and the "writing simply contains a mistake." (Matthew Bender Practice Guide: Cal. Contract Litigation (2025) § 16.12; see also *Stoneridge Parkway Partners, LLC v. MW Housing Partners III, L.P.* (2007) 153 Cal.App.4th 1373, 1383 [upholding trial court's decision to disregard errors in a loan agreement where the "mistake was . . . mutual" and did "not comport with either party's intention or understanding of the transaction"]; § 1640 [an erroneous part of a writing may be disregarded when it "fails to express the real intention of the parties"].) Here, there is no argument or evidence that there was a mutual mistake. Therefore, we cannot disregard the security agreement's clear and unambiguous language that Dean and Tillis were "jointly and severally liable."

The Deans also point to the escrow instructions, but there Dean and Tillis similarly agreed to "hand [Great American] the sum of $660,000.00, constituting the TOTAL CONSIDERATION." The escrow instructions

10

further reflect the parties' agreement that Dean and Tillis each needed to provide collateral for 50 percent of the loan. From this we conclude that the loan documents clearly and unambiguously provide that Dean and Tillis were joint and severally liable.

Moreover, to the extent there is any ambiguity creating a factual conflict, substantial evidence supports the trial court's finding. In February 2012, Dean emailed Ticinovich for an update on whether he would be pursuing Tillis "for the balance he owes." If Dean had not been jointly responsible for Tillis's share, Dean would have had no reason to care whether Great American pursued Tillis.

When he executed the papers, Medkiff, understood the documents to make Dean and Tillis jointly and severally liable for the $560,000 loan. Medkiff also testified that in oral discussions Dean repeatedly reiterated his intent to repay the entire loan balance. Although Dean denied that at trial, the trial court found Medkiff's testimony more credible. (*Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 485 [appellate courts "do not reweigh evidence or reassess the credibility of witnesses"].)

C.     *Dean is Estopped from Denying Forbearance*

The Deans argue that trial court erred when it ruled that there was an oral modification and Dean was estopped from denying it. We disagree.[5]

Although the security agreement here expressly precludes oral modification, it may nonetheless "be modified by an oral agreement to the extent that the oral agreement is executed by the parties." (§ 1698, subd. (b); see *LGCY Power, LLC v. Superior Court* (2022) 75 Cal.App.5th 844, 868

---

[5]     Although Great American correctly notes the October 2020 order denying summary judgment is not appealable, the order is reviewable on appeal from the final judgment. (See *Maria D. v. Westec Residential Security, Inc.* (2000) 85 Cal.App.4th 125, 129, fn. 1.)

11

["where, as here, a written agreement prohibits oral modifications, an oral modification nevertheless is enforceable to the extent it has been executed by the parties"].) Moreover, even if not modified by an executed oral agreement, "the parties may, by their words or conduct, waive contractual rights." (*Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 78; see *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 141 [" 'the parties may, by their conduct, waive [a no oral modification] provision' where evidence shows that was their intent"].)

Whether a written contract was modified by an executed oral agreement is a question of fact. (*Daugherty Co. v. Kimberly-Clark Corp.* (1971) 14 Cal.App.3d 151, 158.) An agreement to modify a written contract may be implied by conduct of the parties that is both inconsistent with the written contract and warrants the conclusion that the parties intended to modify it. (*Garrison v. Edward Brown & Sons* (1944) 25 Cal.2d 473, 479.) Estoppel may bar a statute of limitations defense when "the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit." (*Doe v. Marten* (2020) 49 Cal.App.5th 1022, 1028.) We review factual findings regarding the terms of an oral contract and the existence of equitable estoppel under the substantial evidence test. (*Cheema v. L.S. Trucking, Inc.* (2019) 39 Cal.App.5th 1142, 1149; *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1263.)

Substantial evidence supports the trial court's determination that there was an oral modification. There is evidence that the written terms of the loan were modified orally when, at Dean's request, Medkiff agreed to accept lower monthly payments and an extension of the loan upon Dean's reaffirmation that the reduction was temporary and that he would repay the entire loan. The same evidence similarly supports that Dean induced Great

12

American to forbear from suing earlier when he approached Medkiff, told him that he would be unable to pay the balance of the loan by the maturity date, and asked Medkiff to extend the maturity date and to accept lower monthly partial interest-only payments. There was also evidence that Dean's request succeeded since Great American did not sue while Dean kept making monthly interest-only payments and also affirmed his obligation to repay the loan for over seven years after the initial maturity date.

Though Dean disputed much of this evidence, the trial court credited Medkiff's testimony and was justified in concluding there was an oral modification. We find substantial evidence supports the trial court's finding that Dean was estopped from denying the oral modification occurred. (See *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 [" 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' "].)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


                                                    RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.