[L. A. No. 29351.   In Bank.   Feb. 20, 1969.]

BEVERLY M. SLOBOJAN, Plaintiff and Appellant, v. WESTERN TRAVELERS LIFE INSURANCE COMPANY, Defendant and Appellant.

Boller, Suttner & Boller and Albert J. Morrissey for Plaintiff and Appellant.

Church & Howard, Charles H. Church, John S. Hunt and Charles F. Howard for Defendant and Appellant.

BURKE, J.—In this declaratory relief action defendant insurance company appeals from a judgment determining that life insurance coverage for which plaintiff's husband had applied was in force on the date of his death, and that his death was accidental within the double indemnity clause of the insurance. The ruling that insurance was in force was made upon plaintiff's motion for partial summary judgment (Code Civ. Proc., § 437c), and the ruling that death was accidental was thereafter made following trial on that issue before another judge sitting without a jury. Plaintiff cross-appeals from that portion of the judgment which denies her

interest prior to entry of judgment. We have concluded that plaintiff is entitled to the interest she claims, and that the judgment in her favor should be affirmed in all other respects.

1. *Summary Judgment Ruling That Coverage Existed.*

The allegations of plaintiff's complaint may be summarized as follows: Her husband, John M. Slobojan, signed an application of defendant insurance company for an insurance policy on his life in the amount of $25,000 with double-indemnity provision covering death by accident with respect to the first $5,000, and designating plaintiff as beneficiary; he also paid the first month's premium of $16.14 by check which defendant deposited in its account. About one week later, at defendant's request Slobojan was examined by defendant's doctor and advised that he was a good physical risk; on the same day defendant issued its policy of insurance on Slobojan's life and forwarded the policy to its agent for delivery to the insured. The agent notified Slobojan that the policy was ready but that the premium for the double-indemnity coverage was 44 cents per month higher than that stated in the application, and requested that the extra 44 cents for the first month's premium be added to his check for the second month's premium. Five days later Slobojan died an accidental death. Plaintiff notified defendant of the death and asked for the policy and claim forms to enable her to make a claim under the policy, but defendant refused to deliver the policy to plaintiff or to accept her claim and make payment under the policy, asserting that no contract of insurance was in existence and that defendant had no liability.

After answer by the defendant denying liability, the taking of certain depositions, and receipt of defendant's replies to plaintiff's request for admission of facts (Code Civ. Proc., § 2033), plaintiff moved for a partial summary judgment under Code of Civil Procedure section 437c on the ground that there was no defense to the action on the issue of insurance coverage, as distinguished from the factual issue of cause of death. The motion was granted, and defendant challenges the court's ruling.

The matter to be determined by the trial court on a motion for summary judgment is whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party

would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact. ■ The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion. ■ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. (*Joslin* v. *Marin Municipal Water Dist.* (1967) 67 Cal.2d 132, 146-147 [9] [60 Cal.Rptr. 377, 429 P.2d 889]; *Pettis* v. *General Tel. Co.* (1967) 66 Cal.2d 503, 505 [1-5] [58 Cal.Rptr. 316, 426 P.2d 884]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ■ The moving party cannot depend upon allegations in his own pleadings to cure deficient affidavits, nor can his adversary rely upon his own pleadings in lieu or in support of affidavits in opposition to a motion; however, a party can rely on his adversary's pleadings to establish facts not contained in his own affidavits. (*Joslin* v. *Marin Municipal Water Dist., supra,* at pp. 147-148 [10].)

Applying the foregoing rules to the record in the present case, with all intendments in favor of the party opposing the motion—here, defendant—it appears that in September 1964 defendant's agent, Miss Fuller, submitted a proposal for an insurance program to Slobojan, aged 31, who was a deputy sheriff for the County of Los Angeles, and told him that if he used a motorcycle in his duties the premium would be $50 more per year than the amount quoted. However, Slobojan was not a motorcycle officer.

On or about October 19, 1964, Slobojan signed and delivered to Miss Fuller an application to defendant, on the latter's printed form, for life insurance in the amount of $25,000 with an accidental death benefit supplement of $5,000; the application quoted a monthly premium of $16.14, and specified the mode of premium payment to be by postdated checks. Miss Fuller had ''quoted the standard risk premium for the coverages he requested to be $16.14 per month . . . [and] explained to [Slobojan] that no insurance would take effect until the Application was accepted by the Company, and a policy issued and accepted by him and that he would be required to take a physical examination.''

On October 19 or 20, 1964, Miss Fuller received in the mail from Slobojan his check dated October 16, 1964, for $16.14 payable to defendant, as well as 11 postdated checks for $16.14 each. On the same day Miss Fuller detached from the application and mailed to Slobojan a "Conditional Receipt" dated October 19, 1964, bearing the same number as the application, and acknowledging receipt of $16.14. On October 22, 1964, defendant deposited Slobojan's first check of $16.14.

On Friday, October 23, 1964, Miss Fuller notified Mrs. Slobojan by telephone that the premium would be 44 cents per month higher because Slobojan was a police officer who made arrests. Mrs. Slobojan promised to advise her husband of the higher premium, and agreed that if Miss Fuller had not heard from them by the following Monday the policy should issue. On Monday Miss Fuller requested defendant to issue the policy.

On the same Monday, October 26, Slobojan underwent a medical examination as required by defendant. On October 28 defendant received the medical report and issued and sent to Miss Fuller its policy, dated October 26, 1964, for the insurance coverage provided in the application, but reciting a monthly premium of $16.58 if paid by postdated checks. Defendant also sent to Miss Fuller the original 11 post-dated checks of $16.14 and an amendment to the application which would acknowledge a 44 cents per month higher premium for the accidental death benefit supplement. Defendant instructed Miss Fuller to secure 11 new postdated checks, of $16.58 each, as well as Slobojan's signature to the amendment. Defendant's instructions to Miss Fuller closed with the statement: "$16.14 RECEIVED WITH APPLICATION. INITIAL MONTHLY PREMIUM $16.58 BALANCE DUE $.44 CHARGED TO AGENCY ACCOUNT."

On Friday, October 30, 1964, Miss Fuller wrote to Slobojan stating, "Your policy is ready for you and will be mailed to you immediately upon the return of the enclosed 'Amendment to Application' signed by you. . . ." With the letter Miss Fuller returned the original 11 postdated checks and requested "eleven more. The first one for $17.02 and the others for $16.58." Thus the additional 44 cents for the first monthly premium was to be added to the first of the new postdated checks. On the same day Miss Fuller again requested Slobojan by telephone to let her know whether or not he wished to accept a policy on the terms offered by the company. He stated that he had been inquiring about pre-

mium rates from other companies and would let her know whether or not he wished to accept a policy from defendant.

Miss Fuller did not hear from Slobojan, and on November 5, 1964, she again telephoned him and in answer to his inquiries again explained the differences between various types of coverage. At that time it was obvious that he had been talking to others about insurance. He promised to call Miss Fuller the following day to let her know whether he wanted the policy, but he failed to do so. On November 7, 1964, Slobojan collapsed and died after chasing a robbery suspect in the course of his duties as a deputy sheriff. Miss Fuller thereupon returned the policy to defendant.

█ If our inquiry ended here the question of whether coverage existed at the time of Slobojan's death would appear to be a very close one, but the terms of the "Conditional Receipt" and a previous court decision interpreting a similar receipt support the trial judge's view that coverage existed. The face of the "Conditional Receipt" which Miss Fuller detached from the application and sent to Slobojan acknowledging receipt of the $16.14 represented by his first check, reads: "This receipt must be detached and delivered to applicant when payment is made. . . . It shall operate as a Binding Receipt only under the conditions set forth. . . .

"Received $16.14, which is tendered subject to conditions on the reverse side of this receipt, on account of full first premium on proposed insurance on life of proposed insured . . . for which an application . . . is this day made to [defendant company]. . . ."

On the reverse side, the "Conditional Receipt" provides: "Conditions: This receipt is given with the understanding that any policy issued from the application . . . will be dated and placed in force subject to its terms on date of application or date of latest medical examination, if required, whichever is later, provided that: 1. Proposed insured . . . [is] determined by the Company . . . in accordance with its rules and practices, to be insurable on such date for the coverage exactly as applied for, and such policy is issued within 30 days from date of application. 2. Full first premium is paid in cash on date of application. 3. [Not pertinent here.] Any policy issued when all of the above conditions are not met, or offered for acceptance on a basis other than exactly as applied for, will bear its actual date of issue and shall take effect when policy has been delivered to and accepted by applicant and first pre-

mium paid during life time . . . of the proposed insured.
. . .''

The quoted provisions of the ''Conditional Receipt'' are comparable to those of the insurance application involved in *Ransom* v. *Penn Mut. Life Ins. Co.* (1954) 43 Cal.2d 420 [274 P.2d 633],[1] in which this court held that a contract of insurance arose upon the insurer's receipt of the completed application and the first premium payment. As noted in *Ransom*, the mooted provisions are subject to the interpretation that the applicant is offered a choice of either paying his first premium when he signs the application, in which event the insurance will be in force from the date of the application, or of paying upon receipt of the policy, in which event no insurance shall be in force until the policy is delivered. Further, ''The understanding of an ordinary person is the standard which must be used in construing the contract, and such a person upon reading the application would believe that he would secure the benefit of immediate coverage by paying the premium in advance of delivery of the policy. ▮ There is an obvious advantage to the company in obtaining payment of the premium when the application is made, and it would be unconscionable to permit the company, after using language to induce payment of the premium at that time, to escape the obligation which an ordinary applicant would reasonably believe had been undertaken by the insurer. Moreover, defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms. While some of the language tends to support the company's position, it does no more than produce an ambiguity, and the ambiguity must be resolved against defendant. [Citations.]'' (*Ransom* v. *Penn Mut. Life Ins. Co., supra,* 43 Cal.2d 420, 425.)

---

[1]In *Ransom* the application contained this clause: ''If the first premium is paid in full in exchange for the attached receipt signed by the Company's agent when this application is signed the insurance shall be in force, subject to the terms and conditions of the policy applied for, from the date of Part I or Part II of this application, whichever is the later, provided the Company shall be satisfied that the Proposed Insured was at that date acceptable under the Company's rules for insurance upon the plan at the rate of premium and for the amount applied for, but that if such first premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered while the health, habits, occupation and other facts relating to the Proposed Insured are the same as described in Part I and Part II of this application and in any amendments thereto.'' (P. 423 of 43 Cal.2d.)

■ " 'It may be inferred from defendant's failure to remedy the situation by appropriate language that the companies would rather assume a calculated risk in an isolated case such as this, than lose the benefits flowing from the general acceptance of premiums in advance, thus binding and committing the insured immediately to the contract as written.' " (*Brunt* v. *Occidental Life Ins. Co.* (1963) 223 Cal. App.2d 179, 186 [35 Cal.Rptr. 492], quoting from *Wood* v. *Metropolitan Life Ins. Co.* (1961) 193 F.Supp. 371, 374, affd. 302 F.2d 802.)

■ There is no merit in defendant's contention that Slobojan could not have believed he was covered by insurance because Miss Fuller advised him that if he used a motorcycle in his duties the monthly premium would be higher than the quoted $16.14, and also "explained to him that no insurance would take effect until the application was accepted by the company, and a policy issued and accepted by him and he would be required to take a physical examination." In actual fact, Slobojan did *not* use a motorcycle in his work, and the quoted explanation was made *before* he had paid the $16.14 for the first month's premium; additionally, the explanation did no more than reiterate certain of the language of the "Conditional Receipt."

■ There is likewise no merit in defendant's contention that the first month's premium was not paid in full so as to bring into play the *Ransom* rule. The $16.14 paid was the full premium quoted by defendant's agent and under the circumstances shown here the ordinary person would believe that he had secured coverage by paying it.

■ Nor is there merit in defendant's contention that it had rejected Slobojan's application, thereby terminating any coverage that might have existed prior to his death. Instead, defendant had accepted Slobojan as a risk and had issued the policy as applied for, but at a 44 cents per month premium increase for the $5,000 accidental death supplement—an increase which Slobojan had not rejected. Accordingly, no termination is shown of the insurance coverage which arose when Slobojan paid the first month's premium in advance. (Cf. *Ransom* v. *Penn Mut. Life Ins. Co., supra,* 43 Cal.2d 420, 425 [4].)

In view of the conclusion that coverage existed pursuant to the principles set forth in *Ransom, supra,* we need not decide whether, as plaintiff urges, Insurance Code section 10115

imposed upon defendant a statutory liability to pay death benefits under the circumstances here.

## 2. *Ruling that Death Was Accidental.*

Defendant urges that the evidence fails to support the trial court's determination that Slobojan's death was accidental within the terms of the policy for which he applied. The accidental death benefit provision states in pertinent part that the death of the insured must have "resulted directly and independently of all other causes from bodily injuries caused by accident . . ." and must not have resulted from "disease" or "bodily or mental infirmity."

The trial court found that on the date Slobojan died he was on regular duty as a deputy sheriff on patrol car assignment, and started a chase on foot after a crime suspect, through fence-enclosed backyards of a residential neighborhood; that the chase involved running and fence climbing, and while so engaged, Slobojan tripped and fell; that the chase had covered a distance of approximately 700 feet, when Slobojan collapsed to the ground and died; that an autopsy disclosed a preexisting mild atherosclerosis, but that such condition was non-manifest and non-disabling; that the chase created an unusual physical stress and strain on Slobojan's entire body, which was involuntary, reasonably unexpected and unanticipated by Slobojan and resulted in injury, accidental in origin; that such accidental injury was a prime moving cause of an acute myocardial ischemia and resulted ultimately in Slobojan's death.

These findings are supported by the testimony of Slobojan's fellow officer, who observed much of the chase; by the testimony of a passerby to whom Slobojan declared, just before he collapsed, that he had tripped and fallen; and by medical testimony.[2] Other testimony cited by defendant does

---

[2]Plaintiff's medical expert testified to the opinion that Slobojan "did have a mild atherosclerotic condition of the cardiovascular system that was adequate for ordinary purposes, but with the superimposed burden of this chase and of the [tripping] and falling, that there was created an inadequate blood supply to some parts of the heart . . .; that this did precipitate the chain of events that led to his death. . . . [T]he strain is the primary causative factor that set the chain of events in motion that led to the death through the mechanism that I described. . . . It is my concept that there is a form of trauma involved in physical and emotional strain. . . . The changes described by the autopsy surgeon are consistent with the trauma of the physical strain that was described to me. . . . The description of the hyperemia of the occipital area of the

no more than create a conflict, which the trial court resolved in plaintiff's favor. No basis appears for interference by this court with the ruling that Slobojan met an accidental death.

As stated in *Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305, 309-310 [6] [163 P.2d 689], "the correct rule [is] that the presence of preexisting disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause. [Citations.]" (See also *Shafer* v. *American Cas. Co.* (1966) 245 Cal.App.2d 1 [53 Cal.Rptr. 446]; *Miller* v. *United Ins. Co.* (1952) 113 Cal.App.2d 493, 499 [248 P.2d 113]; *Happoldt* v. *Guardian Life Ins. Co.* (1949) 90 Cal.App.2d 386, 398 [203 P.2d 55].)

### 3. *The Right to Interest.*

Plaintiff is entitled to prejudgment interest on her recovery, under sections 3287 and 3302 of the Civil Code[3] (see *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 624-626 [39 Cal.Rptr. 739, 394 P.2d 579]), commencing on November 15, 1964, the date defendant denied coverage. (See *J. J. Newberry Co.* v. *Continental Cas. Co.* (1964) 229 Cal.App.2d 728, 734 [40 Cal.Rptr. 509]; *Maier Brewing Co.* v. *Pacific Nat. Fire Ins. Co.* (1963) 218 Cal.App.2d 869, 878-880 [33 Cal. Rptr. 67]; *Chase* v. *National Indem. Co.* (1954) 129 Cal.App. 2d 853, 865 [278 P.2d 68].) Even though as here, there is no specific prayer for interest, it may nevertheless be awarded in a contested action. (*Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 366 [11] [33 Cal.Rptr. 257, 384 P.2d 649].)[4]

---

scalp may constitute trauma or may represent a blow or an injury to the scalp. . . ."

Defendant's medical expert testified to the opinion that the death resulted from the combination of "the strenuous running and the myocardial ischemia. . . . [T]he extra stress on the basic pathological condition resulted in the ischemia and subsequent death."

[3]Section 3287: "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . . This section is applicable to recovery of damages and interest from any such debtor. . . ."

Section 3302: "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."

[4]Defendant's assertion that no claim to interest was made in this case prior to the entry of judgment, and that the right thereto was never

That portion of the judgment which denies prejudgment interest to plaintiff is reversed with directions that such interest be awarded; in all other respects the judgment is affirmed. Plaintiff to recover costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

made an issue until the matter was appealed, is not borne out by the record. Instead, plaintiff urged her right to prejudgment interest in proposed findings and conclusions of law, to which defendant filed objections and counterproposals, and again in amended findings and conclusions and in the form of judgment prepared and submitted to the court by her counsel.