[Civ. No. 64317. Second Dist., Div. One. Aug. 6, 1982.]

BRADLEY EATON, Plaintiff and Appellant, v.
CONNOLLY-PACIFIC, INC., Defendant and Respondent.

**COUNSEL**

Richard Devirian for Plaintiff and Appellant.

Keesal, Young & Logan, Terry Ross and William F. Daly, Jr., for Defendant and Respondent.

**OPINION**

**SOVEN, J.**\*—Plaintiff and appellant Bradley Eaton filed an action for personal injuries under the Jones Act, alleging that he was a "member of the crew" of defendant's derrick barge, that the vessel was unseaworthy and defendant was negligent, and, as a result, plaintiff was injured. Defendant Connolly-Pacific, Inc., his employer, moved for summary judgment on grounds that plaintiff was not a "seaman" under the Jones Act when he was injured. The trial court granted defendant's motion for summary judgment.

### FACTS

The facts are stated most favorably to plaintiff, consistent with the rules for review of a summary judgment.

In September 1977 plaintiff was employed by defendant as an equipment maintenance worker. His assignment was to dismantle a crane from "Derrick Barge No. 4." While removing some metal from the cab of the crane, plaintiff fell from the roof of the cab and was injured. He

---

\*Assigned by the Chairperson of the Judicial Council.

filed a claim with the Department of Labor under the Longshoremen's and Harbor Workers' Compensation Act. He also filed this action.

Plaintiff had been employed by defendant for nearly 20 years, working in various capacities, chiefly at "water-based" tasks. When injured, plaintiff was, as noted, an equipment maintenance worker. He worked regular hours at defendant's yard in Long Beach, returning home each afternoon.

Plaintiff considered himself "permanently assigned" to the barge because he had been working on that barge for 3 to 7 days before the accident and contemplated another 10 to 14 days of service on the barge.

Derrick Barge No. 4 was constructed in 1933 and had a steam-powered crane mounted on its turntable. Defendant's general manager declared that the barge had been completely and permanently withdrawn from service, had been idle and not used in any capacity for more than five years, and at the time of plaintiff's accident was being stripped of all salvageable equipment. Although the barge was afloat, aside from periodic dry-docking for repairs necessary to keep the barge afloat, it remained tied up at defendant's yards. The barge had no master or crew assigned to it, was not registered as a vessel with the United States Coast Guard, and had no navigational lights or anchors.

Plaintiff declared that the barge was fitted with anchor lights, day-shapes and crew quarters, required only ordinary maintenance in dry-dock, was fully serviceable as a seagoing barge, and had no structural disabilities which would have prevented its use upon navigable waters as a barge. The bilge pumps on the barge were operating.[1]

## DISCUSSION

■ The rules governing the granting of a motion for summary judgment are clear: A summary judgment is proper only if the affidavits supporting that judgment are sufficient to sustain the judgment, and the opposing party does not show facts sufficient to raise a triable issue of fact. ■ The moving party's affidavits are strictly construed while the opposing party's affidavits are liberally construed. ■ All doubts as to the propriety of a summary judgment are resolved against

---

[1]Defendant's general manager declared that the barge had no crew's quarters, and was unserviceable.

granting the motion. (E.g., *Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271].) We conclude that the motion for summary judgment was properly granted.

### The Jones Act

Under the Jones Act, any "seaman" injured in the course of his employment has the right to seek damages for injuries resulting from his employer's fault. (46 U.S.C. § 688.) ■ "To establish seaman status a claimant must meet a threshold test of showing sufficient contact with water-borne or vessel-related activities." (*Landry* v. *Amoco Production Co.* (5th Cir. 1979) 595 F.2d 1070, 1072.) A three-prong test is used to determine seaman status: (1) the vessel must be "in navigation"; and (2) the plaintiff must have been aboard that vessel to perform duties in aid of navigation, and (3) the plaintiff must have had a more or less permanent connection with the vessel or with a specific group of vessels. (E.g., *Offshore Company* v. *Robison* (5th Cir. 1959) 266 F.2d 769, 775 [75 A.L.R.2d 1296].)

The threshold—and decisive—issue in this case is whether a trier of fact could conclude that Derrick Barge No. 4 was a "vessel in navigation," within the meaning of the Jones Act. ■ To be a vessel in navigation, the purpose and business of the structure must to some degree be the transportation of passengers, cargo, or equipment from place to place across navigable waters. A barge is generally a vessel in navigation, even though it lacks power of its own. (*Bennett* v. *Perini Corporation* (1st Cir. 1975) 510 F.2d 114, 116.)[2] This general principle is not disputed.

It is also not disputed that Derrick No. 4 performed *no* function. ■ Plaintiff's theory, then, based on his assertion that the barge could be used in navigational waters, is that potential use is sufficient to raise a question of fact whether the barge is a vessel in navigation.

It is true that the United States Supreme Court has tended to hold that the issue whether a ship is a vessel in navigation is a question of fact for the jury in all but the clearest cases. (See *Butler* v. *Whiteman*

---

[2]On the other hand, a floating drydock is generally not a vessel within the meaning of the Jones Act. (*Atkins* v. *Greenville Shipbuilding Corporation* (5th Cir. 1969) 411 F.2d 279, 282-283.) However, even dredges and drilling platforms may be "vessels" where these special purpose structures serve functions that require exposure to the hazards of the sea and typically function at a distance from the shore. (*Buna* v. *Pacific Far East Line, Inc.* (N.D. Cal. 1977) 441 F.Supp. 1360, 1363.)

(1958) 356 U.S. 271 [2 L.Ed.2d 754, 78 S.Ct. 734]; cf. *Roper* v. *United States* (1961) 368 U.S. 20, 23-24 [7 L.Ed.2d 1, 3-4, 82 S.Ct. 5] [court refused to reverse trial court's factual determination that ship not vessel in navigation].)

■ Still, the rule is that a ship is not a vessel in navigation where that ship has not performed any function for a substantial period of time. Thus, a ship is not a vessel in navigation where the ship is withdrawn from service for repairs by others and is in drydock (*Johnson* v. *Quail Transport Company* (5th Cir. 1971) 440 F.2d 109, 113-115), or is laid up for the winter with no crew living on board. (*Bodden* v. *Coordinated Caribbean Transport, Inc.* (5th Cir. 1966) 369 F.2d 273, 275 [5 A.L.R. Fed. 668], and cases discussed.)[3]

Even more clearly, a ship is not a vessel in navigation where, as here, that ship has been completely and permanently withdrawn from service[4] and no future use on water is evidenced. (*Hill* v. *Diamond* (4th Cir. 1962) 311 F.2d 789, 792; *Garcia* v. *Universal Seafoods, Ltd.* (W.D. Wa. 1978) 459 F.Supp. 463, 465.)

Thus, in *Noel* v. *Isbrandtsen Company* (4th Cir. 1961) 287 F.2d 783, 784-785, a ship was not a vessel in navigation where the ship was being stripped for return to an idle fleet and only a skeleton crew remained on board. Similarly, in *Gonzales* v. *United States Shipping Board, E. F. Corp.* (E.D.N.Y. 1924) 3 F.2d 168, 169-170, 130 ships in a mothballed fleet were not vessels within the meaning of the act.

■ Plaintiff's reliance on *Butler* v. *Whiteman, supra,* 356 U.S. 271, is misplaced. In *Harris* v. *Whiteman* (5th Cir. 1957) 243 F.2d 563, 564, the court of appeals held that the plaintiff was not a seaman because the ship was a "dead ship" which had not been used for a year, had no Coast Guard certificate to operate and had no crew. The Supreme Court reversed in a *per curiam* opinion, holding that the plaintiff's evidence presented jury questions whether the tug was in

[3] A vessel may be considered "in navigation" although in a repair yard for periodic repairs, or while temporarily attached to some object. Indeed, a schooner tied to a wharf and used as a restaurant but still equipped for sailing and a houseboat lacking motive power but not permanently attached to the shore have been considered to be vessels in navigation within the meaning of the Jones Act. (*Griffith* v. *Wheeling Pittsburg Steel Corporation* (3d Cir. 1975) 521 F.2d 31, 37.)

[4] Assuming that defendant's statement that the barge "had been completely and permanently withdrawn from service" is a mere conclusion, the facts discussed in the opinion make that conclusion inescapable.

navigation and whether or not the decedent was a seaman and a member of the tug's crew. (356 U.S. at p. 271 [2 L.Ed.2d at p. 755].) *Butler* is distinguishable. There, the tug had been unused for only one year; and, at the time of his death, the decedent was "cleaning the boilers preparatory to a Coast Guard inspection," (233 F.2d at p. 564), indicating an expected return to service. Here, as noted, Derrick Barge No. 4 had been unused for five years, and, rather than being repaired for Coast Guard inspection, was being stripped for salvageable scrap.

Because we conclude that plaintiff has failed to show a triable issue of fact whether Derrick Barge No. 4 was a vessel in navigation, we need not discuss plaintiff's other contentions he was aboard the barge to perform duties in "aid of navigation" and that he had a more or less permanent connection with the barge.[5]

In conclusion, we are aware of no case in which a barge withdrawn from service for some five years, in the process of being stripped of its salvageable equipment for sale as scrap, manned by no crew and serving no useful purpose, with no suggestion that the barge will ever be used again, has been held to be a vessel in navigation within the meaning of the Jones Act.

Affirmed.

Hanson (Thaxton), Acting P. J., and Dalsimer, J., concurred.

---

[5]We note that plaintiff's assignment on the barge would not permit this court to conclude as a matter of law that his task was not in aid in navigation. This concept has been broadly construed to encompass the tasks which contribute to the function of the vessel, the accomplishment of its mission or to the operation or welfare of the vessel. (*Brown* v. *ITT Rayonier, Inc.* (5th Cir. 1974) 497 F.2d 234, 237, and cases collected.) Thus, the critical issue in this case is the status of the barge and not the function performed by plaintiff on that barge. (See *Senko* v. *LaCrosse Dredging Corp.* (1957) 352 U.S. 370, 374 [1 L.Ed.2d 404, 408, 77 S.Ct. 415]; but cf. *South Chicago Co.* v. *Bassett* (1940) 309 U.S. 251, 260 [84 L.Ed. 732, 737, 60 S.Ct. 544].)

Similarly, whether plaintiff's connection with Derrick Barge No. 4 was "permanent," would be a question of fact. No exact standards have been set forth to determine permanency; virtually any connection other than a transitory contact can satisfy the requirement of permanent connection. (See *Grimes* v. *Raymond Concrete Pile Co.* (1958) 356 U.S. 252, 253 [2 L.Ed.2d 737, 738-739, 78 S.Ct. 687], revg. 245 F.2d 437.)