[Civ. No. 24455. Fourth Dist., Div. One. Oct. 15, 1982.]

LARRY A. GIGAX, Plaintiff and Appellant, v.
RALSTON PURINA COMPANY, Defendant and Respondent.

COUNSEL

Kennedy, Crockett, Dougherty & Hildre, Clyde C. Crockett and Thomas G. Gilmore for Plaintiff and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Thomas E. Sharkey and William R. Warhurst for Defendant and Respondent.

OPINION

**STANIFORTH, J.**—Plaintiff Larry A. Gigax seeks reversal of a summary judgment granted in favor of defendant Ralston Purina Company (Ralston). Gigax's complaint sought money damages for personal injuries based on theories of products liability, negligence and wanton and reckless misconduct. Gigax was employed as a laborer for the Van Camp Seafood Company (Van Camp) in San Diego, California. While cleaning a nonoperating hydraulic conveyor belt machine, the machine suddenly started and Gigax's left arm was drawn in and amputated at the elbow. The hydraulic conveyor belt was designed and manufactured by Ralston and Gigax alleges negligent design as a basis for Ralston's liability. Following his injury Gigax pursued his workers' compensation remedy against Van Camp as his statutory employer and obtained compensation and award. He then instituted this common law damage action against Ralston as a third party tortfeasor. (See Lab. Code, §§ 3602, 3852.)

Upon Ralston's factual representation Van Camp was a division of Ralston and not a "subsidiary" corporation, the court found no triable issue of fact existed and determined Ralston, not Van Camp, was Gigax's employer at the time of his injury and therefore immune from tort liability pursuant to the exclusive remedy provisions of Labor Code section 3601, subdivision (a). Upon this basis the court granted summary judgment. Gigax appeals, pointing to factual issues that must be determined before deciding whether Ralston is the statutory employer immune from a common law tort action.

FACTS

We derive the following facts from the documents and declarations presented to the trial court in connection with Ralston's motion for summary judgment. Van Camp Seafood Company, Inc., was incorporated in California in 1922 and its headquarters are in San Diego.

Gigax was employed by Van Camp beginning November 30, 1971. He continued as an employee until April 1, 1978, the date of the accident.

Gigax was originally hired by Phil Reyna, Industrial Relations Manager for Van Camp. He worked under the direction of a Van Camp supervisor. The right to fire Gigax was vested in Roy Thompson, General Manager of Van Camp.

Van Camp maintains its employment records in its San Diego office. It incurred liability on its own account for social security obligations in 1979 for $2,373,890.24. Van Camp incurred withholding tax liability in 1979, federal income tax liability for $2,523,780.53 and a liability for California income tax for $444,323.80. Gigax was reported as an employee on Van Camp's payroll return. Further, Van Camp prepared a profit and loss statement detailing the operation of Van Camp. Van Camp produces cans of tuna and in its sales program prominently displays the words "Van Camp" and its logo, "Chicken of the Sea." The San Diego telephone directory lists Van Camp Seafood Company, not Ralston.

Ralston Purina Company is a Missouri corporation. Ralston asserts it "acquired substantially all of the assets of Van Camp Seafood Company, a California corporation, pursuant to a plan and arrangement of reorganization within the meaning of Internal Revenue Code section 368, subdivision (a)(1)(C)." Pursuant to this plan Van Camp transferred property and assets to Ralston in exchange for delivery to Van Camp of 53/100 of a share of Ralston stock for each share of Van Camp stock and for the assumption of certain liabilities.

It is represented that Van Camp submits monthly financial reports to Ralston as well as its annual budget. But Ralston has refused to answer questions as "not applicable" concerning activities, meetings and minutes of "division officers" of Van Camp. Ralston's answers do not disclose the present corporate status of Van Camp Seafood Company. The nature of Ralston's control over Van Camp since the acquisition of Van Camp stock is presently in an evidentiary limbo awaiting light.[1]

Separate legal and financial departments are employed by Van Camp and deal solely with the Van Camp operations. Van Camp and Ralston are both multinational corporations in scope of activities. Van Camp has a worldwide packing and marketing business.

---

[1]The records of the Commissioner of Corporations of California as well as the Secretary of State were not brought before the trial court. Van Camp Seafood Company was a corporation organized in California. Whether it has been dissolved, absorbed, merged or whatever, Ralston has chosen not to disclose.

Gigax brought his petition for workers' compensation award against "Van Camp Seafood" as his employer. *The answer before the workers' compensation board designates Van Camp Seafood, self-insured as the employer and Ralston Purina as the insurance carrier.* This particular document was signed by Ralston's agent on the line designated "employer or insurer carrier." A letter from Jeffrey Trambucco, Ralston's Workers' Compensation Administrator, declared: *"As you are aware, this office is handling the workers' compensation claims for Van Camp Seafood."* (Italics added.) This letter also designates the employer as Van Camp.

Gigax himself perceived Van Camp—and no one else—to be his employer. He was not aware of any interrelationship between Van Camp and Ralston until it was raised in connection with his bringing Ralston in as a Doe in his amended complaint.

One further set of facts should be noted concerning Van Camp's corporate status. Van Camp has been sued on occasion in the California courts and has responded by filing an answer, and on occasion a cross-complaint as "a California corporation." (See Hays v. Van Camp Seafood Company, San Diego Super. Ct. No. 373165; Mata v. Van Camp Seafood Company, San Diego Super. Ct. No. 409670.)

In sum, the extent and nature of the interrelationship of Ralston to this particular subdivision, division, or subsidiary, or whatever it is legally, has not been detailed in the answers given to interrogatories. However, Ralston repeats this conclusionary phase: Van Camp is an "operating division" of Ralston, not a subsidiary in a legal corporate sense and on this basis alone contends Van Camp is not a separate corporate entity; therefore it is argued Ralston is the corporate employer, not subject to suit as a third party tortfeasor. Upon this complex yet incomplete factual matrix, the trial court determined Ralston was as a matter of law Gigax's employer and therefore not subject to suit as a third party tortfeasor.

DISCUSSION

I

■ It is settled principle of law that the summary judgment procedure is a drastic remedy and should be used with extreme caution so that it does not become a substitute for the open trial method of determining facts. (*Arauz* v. *Gerhardt* (1977) 68 Cal.App.3d 937, 940 [137 Cal.Rptr. 619].) ■ A motion for summary judgment should be denied if the papers submitted show there is a triable issue of fact. (Code Civ. Proc., § 437c; *Daugherty Co.* v. *Kimberly-Clark Corp.* (1971) 14 Cal.App.3d 151, 156 [92 Cal.Rptr. 120].) It is the burden on the party

moving for summary judgment to negate the existence of triable issues of fact in a fashion that entitled it to judgment on the issues raised by the pleadings. (*IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 451-452 [147 Cal.Rptr. 828].) And if an issue of fact is present, the trial judge abuses his discretion in granting such a motion. (*Robinson* v. *City and County of San Francisco* (1974) 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125].) The function of the trial court is issue finding, not issue determination. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].) ■ In examining the papers filed, those of the moving party are to be strictly construed while those of the opposing party are to be liberally construed. (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].) ■ And the moving party cannot depend upon the allegation of his own pleadings to cure a deficiency of fact nor can the adversary do so. However, a party can rely upon the adversary's pleadings to establish facts not contained in his own affidavits. (*Arauz* v. *Gerhardt, supra,* 68 Cal.App.3d 937, 941 [137 Cal.Rptr. 619].)

The workers' compensation laws were enacted in the early 20th century to provide a system of social insurance to compensate victims of work-related injuries. With the rise of the Industrial Revolution came an unprecedented increase in employee injuries and deaths. Victims of these industrial accidents were faced with formidable barriers to recovery because liability was premised on the concept of fault and the defenses of assumption of the risk, the fellow-servant doctrine and contributory negligence had to be overcome.

■ Under the workers' compensation scheme, an employee's remedy against an employer for a work-related injury is—as a general rule—exclusively limited to the benefits provided by statute.[2] Labor Code section 3601 provides, in relevant part: "(a) Where the conditions of compensation exist, the right to recover such compensation pursuant to the provisions of this division is, except as provided in Section 3706 the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment . . . ."

---

[2]But see *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 213 [148 P.2d 633, 152 A.L.R. 1043]; *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8]; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063]; *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 873 [140 Cal.Rptr. 638, 568 P.2d 363]; *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 476, fn. 10 [165 Cal.Rptr. 858, 612 P.2d 948]; *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 666-667 [166 Cal.Rptr. 177, 613 P.2d 238]; *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 272-276 [179 Cal.Rptr. 30, 637 P.2d 266].

However, the employee retains the right to pursue any common law remedies he may have against third party tortfeasors.[3] Labor Code section 3602 provides: "In all cases where the conditions of compensation do not concur, the liability of the employer is the same as if this division had not been enacted." And Labor Code section 3852 reads in pertinent part: "The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer. . . ." Thus the Labor Code does not purport to alter the correlative rights and liabilities of persons who do not occupy the reciprocal statuses of employer or employee. (See *Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d 268, 276-277.) The workers' compensation laws were not designed to relieve one other than the employer from any liability imposed by statute or by common law. (See also *Stackpole* v. *Pacific Gas & Elec. Co.* (1919) 181 Cal. 700, 803 [186 P. 354]; *Baugh* v. *Rogers, supra,* 24 Cal.2d 200, 214; *Campbell* v. *Harris-Seybold Press Co.* (1977) 73 Cal.App.3d 786, 790 [141 Cal.Rptr. 55].) This basic precept of law is not negated by the fact that the "person other than the employer" is not a stranger but has entered into a consensual legal relationship with the employer. (*Baugh* v. *Rogers, supra*; *Campbell* v. *Harris-Seybold Press Co., supra*; *Latham* v. *Technar, Inc.* (E.D.Tenn. 1974) 390 F.Supp. 1031, 1039.)

However, because the workers' compensation laws were enacted before the advent of multiunit enterprises, they fail to address the precise issue here of a parent corporation's claim of immunity from common law tort liability for injuries to the employees of a kindred corporation. (See *Boggs* v. *Blue Diamond Coal Co.* (6th Cir. 1979) 590 F.2d 655, 658.) Thus the pristine issue was and still remains unresolved. Did an employer-employee relationship exist between Gigax and Ralston? More specifically, was Ralston Gigax's statutory employer within the meaning of the applicable Labor Code provisions?

Such a question usually is one of fact for a determination by the trier of fact. This is particularly true where the facts as to the employment relationship are in conflict. (See *Campbell* v. *Harris-Seybold Press Co.,*

---

[3]The justification for this legislative choice is succinctly stated by Professor Arthur Larson, the leading authority on workmen's compensation law: "[T]here is no strong reason of compensation policy for destroying common law rights . . . [and] every presumption should be on the side of preserving those rights, once basic compensation protection has been assured. . . . The injured employee has a right to be made whole—not just partly whole . . . . [A]ll the reasons for making the wrongdoer bear the costs of his wrongdoings still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an incentive to careful conduct and safe work practices." (2A Larson, The Law of Workmen's Compensation (1976) § 72.50 at pp. 14-95.)

*supra*, 73 Cal.App.3d, pp. 790, 791.) ■ In *Schaller* v. *Industrial Acc. Com.* (1938) 11 Cal.2d 46 [77 P.2d 836], the court said (pp. 50-51) as quoted in *Van Horn* v. *Industrial Acc. Com.* (1963) 219 Cal.App.2d 457, 463 [33 Cal.Rptr. 169]: "The question of whether a worker is an employee within the meaning of the Compensation Act . . . is referred to as a question of mixed law and fact to be proved like any other question. [Citations.] It is a question of fact . . . where the facts are in dispute. It becomes a question of law only when but one inference can reasonably be drawn from the facts."

■ The tests for determining who is the employer are the same in workmen's compensation cases as in the master-servant cases. (*City of Brunswick* v. *Taylor* (1953) 87 Ga.App. 751 [75 S.E.2d 203, 204]; *Thomas* v. *Hycon, Inc.* (D.D.C. 1965) 244 F.Supp. 151, 156; *Latham* v. *Technar, Inc., supra*, 390 F.Supp. at p. 1039.)

Courts have consistently recognized the preeminent factor to be considered in determining this factual question of employer-employee relationship is "the right of control." (*Grant* v. *Woods* (1977) 71 Cal.App.3d 647, 653 [139 Cal.Rptr. 533]; *Isenberg* v. *California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 39 [180 P.2d 11].)

The Supreme Court said in *Isenberg* v. *California Emp. Stab. Com., supra*, 30 Cal.2d 34, 39: "The principal test of the employment relationship *was held to be the 'right to control over the manner and means of accomplishing the result desired.' Strong evidence of this right is shown by the right of the principal to discharge the worker.* The secondary tests are listed in that opinion as including, '(a) whether or not the one performing service is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or workman supplies the instrumentalities, tools, and the place of work for the persons doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by time or by the job; (g) whether or not the work is a part of the regular business of the principal; (h) *whether or not the parties believe they are creating the relationship of employer-employee.* (Rest., Agency, § 220; Cal.Ann. § 220.)'" (Italics added.)[4]

---

[4] Professor Larson reasons as to this last factor: "Because the employee's acceptance of a contract of hire is necessarily followed by his loss of right to maintain a common lawsuit against his . . . employer, such acceptance cannot be lightly inferred. *It is clear,*

In the case of *Thomas* v. *Hycon, Inc., supra,* 244 F.Supp. 151, the federal court held the employer-employee relationship has as a principal component the right to control the employee. In *Hycon,* plaintiff Thomas was a truck driver for Edmonds Art Stone Company, the parent corporation of Hycon. Thomas was injured while operating a truck owned by Hycon. After being awarded compensation benefits from Edmonds, Thomas sued Hycon as a third party tortfeasor alleging the truck had defective brakes. Hycon argued it was the employer or so interrelated with and part of the employer that it was not a third party to the employer-employee relationship.

Concerning the right to control, the court said (244 F.Supp. pp. 155-156): "In the instant case, it cannot be said that Hycon had the right to control plaintiff's conduct. The plant foreman of Edmonds Art Stone Company assigned plaintiff to the delivery run on this as on previous occasions; there is no evidence that anyone other than the foreman controlled the plaintiff, or had the right to control him, in the details of his run, its destination, and manner of performance.

". . . . . . . . . . . . . . . . . . .

". . . Plaintiff's operation of the defendant's truck was entirely in obedience to employer Edmonds' instructions.

"This court finds, therefore, that defendant Hycon, Inc., is a third party within the meaning of the Maryland Workmen's Compensation Act, and may be liable in damages for any injuries sustained by employees of Edmonds Art Stone Company as a result of Hycon's negligence."

And in *Tucker* v. *Union Oil Co. of California* (1979) 100 Idaho 590 [603 P.2d 156], the Idaho Supreme Court focused on the right of control as being a significant element in determining statutory employer status: " . . . Collier Carbon did not control its [subsidiary's] day-to-day operation. Collier Carbon did not have the right to control [its subsidiary's] operations or its employees. They did not direct the details of [the subsidiary's] work nor did they have the right to hire or

*therefore, that an employee cannot consent to work for [an] . . . employer in the dark*; '[f]or compensation purposes, [the employee] cannot have an employer thrust upon him against his will or *without his knowledge.* '" (1 Larson, The Law of Workmen's Compensation, § 48.10, at p. 211; italics added; see also *Latham* v. *Technar, Inc., supra,* 390 F.Supp. 1031, 1039.)

fire personnel. There was no employment contract between Collier Carbon and the employees of [its subsidiary], and generally Collier Carbon did not pay the wages of [the subsidiary's] employees." (*Id.,* at p. 160.)

In *Oliver* v. *St. Clair Metal Products Company* (1973) 45 Mich.App. 242 [206 N.W.2d 444], plaintiff Oliver was injured by a machine while working for a wholly owned entity of St. Clair. She recovered workmen's compensation benefits from the subsidiary and then brought suit against the parent. The trial court rejected a motion for summary judgment and the appellate court affirmed, stating (at p. 445): "Defendant St. Clair relying on Renfroe v. Higgins Rack Coating & Manufacturing Co., Inc., 17 Mich.App. 259, 169 N.W.2d 326 (1969), contends the issue of [plaintiff's] status as fellow servant is a matter of law, not a question for the jury. The reliance is misplaced. . . . [W]hen evidence before a trier of fact is incomplete or disputed, the matter should not be disposed of summarily. [Citations.]" To the same effect see *Bradford* v. *Air La Carte, Inc.* (1980) 79 A.D.2d 553 [434 N.Y.S.2d 17, 19].

■ The evidence before the trial court points without contradiction to employment by Van Camp, control and direction of Gigax vested in and exercised by Van Camp, not Ralston. Such evidence, contradicted or uncontradicted, precludes granting of a summary judgment.

## II

A host of cases hold an employee of a wholly owned subsidiary who has obtained workers' compensation benefits from the subsidiary may maintain an action in tort against the parent corporation and this is so even though the parent and subsidiary are covered by the same workmen's compensation policy. In *Wilkerson* v. *Gulfstream Land & Development Corporation* (Fla.App. 1981) 402 So.2d 550, the court said: "[W]e do not believe that a parent corporation must necessarily be shielded from suit by an employee of its subsidiary. Rather, we align ourselves with those jurisdictions which have dealt with this issue and have uniformly upheld the right of the subsidiary's employee to maintain such an independent action. [Citations.]"

Ralston would seek to avoid this rule with its contention that Van Camp is not a subsidiary or separate corporate body but merely a "division." A "subsidiary" corporation is clearly defined in the law. (See Corp. Code, §§ 181, 1001, 1200.) A "subsidiary" is a corporation whose voting

shares of more than a specified percentage are owned directly or indirectly by the parent corporations. (Corp. Code, § 189, subd. (a).) Generally speaking a percentage ownership of more than 50 percent creates the corporation as a "subsidiary" whether it is owned directly or indirectly through one or more subsidiaries. (*Ibid.*) The term "division," however, is not defined with equal clarity in the law. It is a generic term. Webster's Third New International Dictionary (1961) page 664 defines a division as "a major administrative unit of an industrial enterprise comprising at least several departments or constituting a complete integrated unit for a specific purpose." Thus a division could be of the specie described in *Miller* v. *United States* (E.D.Va. 1969) 307 F.Supp. 932,[5] or it could be a totally separate entity.

Thus, the term "division" confers no particular legal qualities on a specific corporate or unincorporated organization. Affixing the label "division" to Van Camp cannot transform it into what Van Camp, in actuality, is not. An exploration of its exact nature, its separateness from or oneness with the parent corporation depends upon the unique factual relationships in each case. The degree of separation between the parent and the subsidiary entity, whether true subsidiary or simply a subdivision of a larger integrated whole, is again a factual matter.

In the present case, the facts, the evidence before the trial court do not demonstrate that Van Camp is merely a smaller part of an integrated whole. On the contrary, certain facts would indicate that Van Camp acts and operates as a separate business entity. It is a proper factual inference from the record below that Van Camp is a corporation totally separate and distinct, in location, function and identity from its corporate parent, Ralston.[6]

---

[5]In *Miller,* the plaintiffs were employed by the installation division, painter's department of defendant shipyard. They sustained injuries when an elevator fell on them and sued the design division for faulty work. The court ruled that the suit was barred. While the two divisions had separate officers, both divisions were part of the same shipyard and ultimately subject to the same president and board of directors. In essence the two divisions were integral parts of a larger whole.

[6]We take judicial notice of the fact that Van Camp made a corporate filing with the Secretary of State on October 30, 1981, as a Delaware corporation. We also take notice that Ralston, a Missouri corporation, filed with the Secretary of State on April 27, 1934. According to the State of California, these two business entities are separate corporations. An appellate court has the same power to take judicial notice as a trial court. (*People* v. *Tossetti* (1930) 107 Cal.App. 7, 12 [289 P. 881].) A court may take judicial notice of the acts and records of the Secretary of State and it is not necessary to submit proof that a document has been filed with him to establish such fact. (*People* v. *Haugh* (1963) 216 Cal.App.2d 603, 606 [31 Cal.Rptr. 74].)

## III

In determining the degree of separation between various entities, the courts have uniformly focused on the substance of the organizations rather than the form.

Professor Clifford Davis in an article entitled "Workmen's Compensation—Using An Enterprise Theory of Employment to Determine Who is a Third Party Tort Feasor" (32 Pitt.L.Rev. 289 (1971)) supports the reality—fact oriented approach. Davis points out: "The diversification of an employer's business into many enterprises also allows the multiple employer to shift the costs of injury from the type of business that caused the injury to the type of business that happened to be the employer of the injured employee. Further it allows the business that caused the injury to escape responsibility for damages which exceed the amount of the compensation paid." (*Id.*, at pp. 294-295.) Davis further observes: "When an employer engaged in multiple enterprises is willing to separate his businesses when such a characterization benefits him (for example, by allowing the exclusion of a separated enterprise because the employees in that enterprise are not numerous enough to make compensation compulsory), a reciprocity of rights requires that courts recognize the separate capacities of the multiple employer when he is sued by an injured employee. *In other words, the multi-enterprise employer can be an employer in one business and a third party tort-feasor in another. Allowing an employee to recover against his multiple enterprise employer as a third party tort-feasor would place the multiple employer on the same footing as single enterprise employers and make the definition of third party tort-feasor more uniform in application.*

"This recognition of the separate employments of the multiple employer is consistent with what has already been done under many compensation statutes. In many instances an employer engaged in more than one enterprise has had one of his activities classified as a separate employment for compensation purposes. [Citing examples.]

". . . . . . . . . . . . . . . . . . . . .

"The conceptual difficulty of seeing an employer in dual capacities— as employer responsible for compensation and as a third party tort-feasor responsible for the negligent acts of employees of a business separate from that employing the injured employee—probably is not sufficient to justify shielding the employer from liability as a third party tort-feasor. . . . As suggested above, no difficulties are encountered where the separate businesses are separately incorporated

because there are two separate employing entities. *Similarly, there should be little difficulty in separating the businesses if the employer has characterized them as separate in order to avoid compensation liability or even if he keeps separate books for each enterprise, which would be likely where the compensation ratings differ. The ultimate issue in cases involving a multi-enterprise employer is whether the injuring enterprise and the enterprise employing the claimant are truly merged.*'' (*Id.*, at pp. 298-300; italics added; fns. omitted.)

This sound reasoning was applied in the leading case of *Boggs* v. *Blue Diamond Coal Co., supra,* 590 F.2d 655, a diversity case interpreting the law of the state of Kentucky.

After careful review of the body of law the *Boggs* court held: ''We conclude that Blue Diamond should not be allowed to avoid the consequences of its corporate structure in order to claim immunity from customary tort liability under the Kentucky workmen's compensation statute. The District Court properly concluded that the Blue Diamond and Scotia are separate and distinct corporations.'' (Pp. 662, 663.)

And in *Latham* v. *Technar, Inc., supra,* 390 F.Supp. 1031, the plaintiff was killed while employed by Jim Robbins Seat Belt Company and suit was brought against the parent company Allied Chemical Corporation. Allied acquired all of the stock of Jim Robbins. The court described the nature of the relationship between Robbins and Allied as follows (p. 1033): ''Among the various divisions of Allied is the Automotive Products Division, which in turn, includes the air bag operations . . . of Jim Robbins.'' (Fn. omitted.) The court said: ''Although the stock ownership of one corporation by another may serve in certain instances as an indicia of identity or commixture as between the two, *for the purposes of determining who may maintain a common law action against a third party, it is not conclusive.* Likewise, the presence of a common insurer as between the holding company and the wholly owned subsidiary does not automatically establish a single employer unit, nor does identity of management create identity for workmen's compensation purposes. . . . [W]hether Allied enjoyed sufficient identity with Jim Robbins on July 3, 1973 so as to raise the former to the legal status of an employer of Brenda Sue Gaddis *can be answered only by determining if the two manufacturing concerns were so completely integrated and commingled that neither party could be realistically viewed as a separate economic entity. The Court cannot find such absolute integration in this case.* An examination of the factors discussed above compel the Court to the observation that Jim Robbins by whom Brenda Sue Gaddis was employed was a sufficiently separate

entity from Allied to permit a common law suit to be maintained against Allied. The fact that any loss suffered by either corporation would ultimately come out of the same common pocket is merely a fiscal attribute of common ownership, a trait which, as noted above, does not preclude the maintenance of a common law suit.'' (*Id.* at p. 1037; italics added; fns. omitted.)

A similar analysis was used by the court in *Thomas* v. *Hycon, Inc.*, *supra,* 244 F.Supp. 151. In that case various brochures and letterheads carried the name of Hycon, Inc., with the additional words "DIVISION— EDMONDS ART STONE COMPANY,'' and in the practical operation Hycon functioned as a department or division of Edmonds. However, separate books of account and profit and loss statements were kept by each corporation. They each maintained payroll withholding and social security tax returns and the plaintiff's employment was reported on Edmond's tax return. The court stated at page 155: ''*In the instant case, the businesses were distinct, one being in manufacturing, the other in distribution.* Stocks were sold in the yard, with a complete transfer of title from Edmonds to Hycon, and separate accounts were maintained for all purposes. Such sales, with their consequent transfer of title, negate any idea of joint venture. There is no evidence of a sharing of profits and losses, or joint proprietary interest or right of mutual control over the subject matter of the enterprise which might indicate a joint venture.

''Saf-T-Cab [167 Md. 46, 172 Atl. 608 (1934)] was essentially a case in which the non-employing corporation was set up with no purpose or function other than the holding of title to the business assets. [Citation.] In such a case identity may be readily inferred. *This is not such a case; Hycon has real, organic business functions and interests different from Edmonds. This court holds, therefore, that Hycon and Edmonds were not a single employer for the purposes of the Act.*'' (Italics added.)

In *Mingin* v. *Continental Can Co.* (1979) 171 N.J.Super. 148 [408 A.2d 146, 148], the parent corporation sought immunity from suit by claiming employer status. Said the New Jersey Supreme Court: ''To adopt Continental's theories on a general basis would be to ignore the development of modern business conglomerates. Merely to reflect upon the facts presented delineates the scope of the problem. To apply the principles advanced to such organizations as this organization or General Motors or Trans-America or International Telephone and Telegraph, all of which own businesses not only national but multi-national in scope and as diversified as the ability of the conglomerate to acquire new businesses, dramatizes the perilous seas upon which the court is invited to

embark. The proposition advanced would thus be to deny the products liability field to a significant percentage of our population. This drastic result ought not to be mandated except by the Legislature.

". . . . . . . . . . . . . . . . . . . . . . . ."

". . . Plaintiff has the right to bring this action. Summary judgment is denied." *(Ibid.)*

And finally, the most profound and insightful analysis of the particular problem with which we are faced was expressed by Justice Cardozo speaking for the New York Court of Appeals in *Berkey* v. *Third Ave. Ry. Co.* (1926) 244 N.Y. 84 [155 N.E. 58, 61], where he stated: "The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it. We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an 'alias' or a 'dummy.' All this is well enough if the picturesqueness of the epithets does not lead us to forget that *the essential term to be defined is the act of operation.*" (Italics added.)

## IV

This is an age of increased concentration of discrete business entities in the hands of syndicates, consortiums, conglomerates, cartels, holding companies and families of companies. These amorphous creatures range from regional to national, to multinational in size; megacorporations are joined by overt as well as covert ties with other corporate giants of the earth. These linkages or affinities—that can be formed or severed within soundproof walls of the corporate board room—may seek to have more than a subtle influence on the question of statutory employer status, thus thwarting California's statutory and interrelated common law scheme for workers' compensation. The California common law tort system faced with interrelated, sprawling economic giants should not deny adequate recovery to an injured employee due to the fortuitous circumstances that the tortfeasor is not a stranger but is controlled by the same business enterprise that controls his immediate employer. (See *Boggs, supra,* at p. 661.)

To that end we hold it is not the name given by a public relations office to a business entity or the misty legal metaphor which determines Ralston's status as employer. As Cardozo teaches us, it is *"the act of*

*operation.''* It is the substance, the hard realities, that are to determine whether one corporation is in fact separate and distinct and therefore under our statutory scheme, not the employer for workers' compensation law purposes. To dispose of this case by simply accepting the label affixed to Van Camp as a ''division'' and thereby determine that Ralston is Gigax's employer is to merely restate the question rather than to answer it. The rights of employees vis-à-vis the statutory employer or third party tortfeasor under California workers' compensation and tort laws are not to be manipulated by such easy levers.

Gigax has the right to bring this action to trial. The summary judgment should have been denied.

Judgment reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 22, 1982.